1  MICHAEL HOFFMAN, Bar No. 162496
   LITTLER MENDELSON
2  A Professional Corporation
   650 California Street, 20th Floor
3  San Francisco, CA  94108.2693
   Telephone:    415.433.1940
4  Facsimile:    415.399.8490

5  JODY A. LANDRY, Bar No. 125743
   LITTLER MENDELSON
6  A Professional Corporation
   501 W. Broadway, Suite 900
7  San Diego, CA  92101.3577
   Telephone:    619.232.0441
8  Facsimile:    619.232.4302

9  Attorneys for Defendants CENDANT
   CORPORATION, CENDANT CAR RENTAL
10 GROUP, LLC, formerly known as Cendant Car
   Rental Group, Inc., CENDANT CAR RENTAL
11 OPERATIONS SUPPORT, INC., and BUDGET
   RENT A CAR SYSTEM, INC.

12

13                  **UNITED STATES DISTRICT COURT**

14                  **NORTHERN DISTRICT OF CALIFORNIA**

15                     **SAN FRANCISCO DIVISION**

16

| | |
|---|---|
| 17  STANLEY KRZESNIAK, individually, in behalf of all others similarly situated, and on | **Case No. C-05-05156 MEJ** |
| 18  behalf of the general public, | **MEMORANDUM OF POINTS AND** |
| 19            Plaintiff, | **AUTHORITIES IN SUPPORT OF MOTION TO DISQUALIFY PLAINTIFF** |
| 20      vs. | **AS CLASS REPRESENTATIVE** |
| 21  CENDANT CORPORATION, CENDANT CAR | Date:      January 18, 2007 |
| 22  RENTAL GROUP, INC., CENDANT CAR | Time:      10:00 a.m. |
| 23  RENTAL OPERATIONS SUPPORT, INC., BUDGET RENT A CAR SYSTEM, INC., | Courtroom:  B |
| 24            Defendants. | Magistrate Judge Maria-Elena James |
| 25  | Complaint Filed: 12/13/05 |
|   | First Amended Complaint Filed:  01/06/06 |

26

27

28

**TABLE OF CONTENTS**

PAGE

I.    INTRODUCTION ............................................................................................. 1

II.   STATEMENT OF FACTS ............................................................................... 1

      A.    Overview Of Plaintiff's Employment ................................................. 1

      B.    Plaintiff's Other Disputes with Defendants ....................................... 2

      C.    Plaintiff's Lawsuit .............................................................................. 4

III.  ARGUMENT ................................................................................................... 6

      A.    Plaintiff Must Show That He Is An Adequate Class Representative ..................... 6

      B.    Plaintiff's Conflicts Reveal That He Is An Inadequate Representative ................. 7

            1.    Plaintiff's Individual Retaliation Claim Creates A Direct Conflict ............ 8

            2.    Plaintiff Has Undue Personal Animus Toward Defendants ..................... 10

            3.    Unique Defenses And Credibility Challenges Will Infect The
                  Merits Of The Class Claims ..................................................... 11

            4.    Plaintiff Cannot Represent Current Managers ......................... 13

IV.   CONCLUSION ............................................................................................... 15

**TABLE OF CONTENTS**
(CONTINUED)

PAGE

<u>CASES</u>

*Amchem Products, Inc. v. Windsor,*
   521 U.S. 591 (1997)........................................................................................... 6, 7, 8, 14

*Armstrong v. Powell,*
   230 F.R.D. 661 (W.D. Okla. 2005)........................................................................... 14

*Ash v. Tyson Foods, Inc.,*
   __ U.S. __, 126 S. Ct. 1195 (2006).............................................................................. 7

*Baffa v. Donaldson, Lufkin & Jenrette Securities,*
   222 F.3d 52 (2d Cir. 2000)........................................................................................ 12

*Broussard v. Meineke Discount Muffler Shop, Inc.,*
   155 F.3d 331 (4th Cir. 1998)....................................................................................... 7

*Brown v. Ticor Title Ins. Co.,*
   982 F.2d 386 (9th Cir. 1992)....................................................................................... 7

*Burkhalter Travel Agency v. MacFarms Int'l, Inc.,*
   141 F.R.D. 144 (N.D. Cal. 1991).................................................................................. 7

*Cooper v. Southern Co.,*
   390 F.3d 695 (11th Cir. 2004)..................................................................................... 7

*Elkins v. American Showa, Inc.,*
   219 F.R.D. 414 (S.D. Ohio 2002) ........................................................................ 13, 14

Fed. R. Civ. P. 23 .......................................................................................................... 15

*Gary Plastic Packaging Corp. v. Merrill, Lynch, Pierce, Fenner & Smith, Inc.,*
   903 F.2d 176 (2d Cir. 1990)...................................................................................... 12

*General Tel. Co. v. Falcon,*
   457 U.S. 147 (1982).................................................................................................. 14

*Georgine v. Amchem Products, Inc.,*
   83 F.3d 610 (3d Cir. 1996).......................................................................................... 7

*Global Minerals & Metals Corp. v. Superior Court,*
   113 Cal. App. 4th 836 (2003)...................................................................................... 8

*Goetsch v. Shell Oil Co.,*
   197 F.R.D. 574 (W.D. N.C. 2000) ............................................................................... 8

*Halaba v. Worldcom Network Serv., Inc.,*
   196 F.R.D. 630 (N.D. Okla. 2000)............................................................................. 12

1

## TABLE OF CONTENTS
(CONTINUED)

2

PAGE

3     *Hanlon v. Chrysler Corp.,*
         150 F.3d 1011 (9th Cir. 1998)........................................................................................ 6, 7

4

5     *Hornreich v. Plant Indus., Inc.,*
         535 F.2d 550 (9th Cir. 1976)............................................................................................. 8

6     *In re General Motors Corp. Pick-Up Truck Fuel Tank Litig.*
         55 F.3d 768 (3d Cir. 1995)........................................................................................ 10, 11

7
      *J.H. Cohn & Co. v. American Appraisal Assoc., Inc.*
8        628 F.2d 994 (7th Cir. 1980).......................................................................................... 12

9     *Jimenez v. Domino's Pizza, Inc.,*
         __ F.R.D. __, 2006 WL 2788671 (C.D. Cal. 2006) ..................................................... 13
10
      *Jordan v. Hawaii Govt. Employees' Ass'n,*
11       472 F. Supp. 1123 (D. Haw. 1979) ................................................................................ 14

12    *Kamerman v. Ockap Corp.,*
         112 F.R.D. 195 (S.D.N.Y. 1986) .................................................................................... 10
13
      *Kline v. Wolf,*
14       702 F.2d 400 (2d Cir. 1983)............................................................................................ 12

15    *Kurczi v. Eli Lilly & Co.,*
         160 F.R.D. 667 (N.D. Ohio 1995) .................................................................................... 8
16
      *Larson v. Dumke,*
17       900 F.2d 1363 (9th Cir. 1990)........................................................................................... 8

18    *Lau v. Standard Oil Co.,*
         70 F.R.D. 526 (N.D. Cal. 1975) ........................................................................................ 9
19
      *Mantolete v. Bolger,*
20       767 F.2d 1416 (9th Cir. 1985)........................................................................................... 6

21    *Marcus v. Kansas Dept. of Revenue,*
         206 F.R.D. 509 (D. Kan. 2002)......................................................................................... 7
22
      *Morgan v. Metro Dist. Comm'n.,*
23       222 F.R.D. 220 (D. Conn. 2004) .................................................................................... 14

24    *Moses v. Avco Corp.,*
         97 F.R.D. 20 (D. Conn. 1982)........................................................................................... 9
25
      *Noonan v. Indiana Gaming Co.,*
26       217 F.R.D. 392 (E.D. Ky. 2003) ...................................................................................... 9

27    *Norman v. ARCS Equities Corp.,*
         72 F.R.D. 502 (S.D.N.Y. 1976) ...................................................................................... 10
28

**TABLE OF CONTENTS**
(CONTINUED)

**PAGE**

*Plekowski v. Ralston Purina Co.,*
   68 F.R.D. 443 (M.D. Ga. 1975), *aff'd*, 557 F.2d 1218 (5th Cir. 1977) ................................... 8

*Ramirez v. Yosemite Water Co.,*
   20 Cal. 4th 785 (1999) ................................................................................................. 13

*Rutledge v. Electric Hose & Rubber Co.,*
   511 F.2d 668 (9th Cir. 1975)........................................................................................... 7

*Smith v. Babcock,*
   19 F.3d 257 (6th Cir. 1994)............................................................................................. 7

*Southern Snack Foods, Inc. v. J&J Snack Foods Corp.,*
   79 F.R.D. 678 (D. N.J. 1978) ....................................................................................... 14

*Strong v. Arkansas Blue Cross & Blue Shield, Inc.,*
   87 F.R.D. 496 (E.D. Ark. 1980)...................................................................................... 9

*Whittum v. Saginaw County,*
   2004 WL 768901 (E.D. Mich. 2004) .............................................................................. 9

**STATUTES AND RULES**

29 U.S.C. § 2601 ............................................................................................................ 5

Cal. Bus. & Prof. Code § 17200 ............................................................................... 5, 13

Cal. Govt. Code § 12945.2........................................................................................... 5

Cal. Lab. Code § 203............................................................................................ 4, 5, 15

Cal. Lab. Code § 226.................................................................................................... 5

Cal. Lab. Code § 510................................................................................................ 5, 9

Cal. Lab. Code § 515.............................................................................................. 5, 12

Cal. Lab. Code § 1194................................................................................................. 5

Fed. R. Civ. P. 23 ........................................................................................................ 6

Fed. R. Civ. P. 23(a)............................................................................................ 6, 7, 14

Fed. R. Civ. P. 23(a)(4) ............................................................................................. 14

Fed. R. Civ. P. 23(b)(1).............................................................................................. 6

Fed. R. Civ. P. 23(b)(2).............................................................................................. 6

Fed. R. Civ. P. 23(b)(3)........................................................................................ 6, 14

1
2

**TABLE OF CONTENTS**
(CONTINUED)

PAGE

3    **<u>OTHER AUTHORITIES</u>**

4    Cal. I.W.C. Wage Order No. 9-2001 § 1(A)(1) .......................................................................... 12

5    5 Moore's Federal Practice § 23.25[2][b][vii] .......................................................................... 6, 8

6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## I.     INTRODUCTION

Plaintiff Stanley Krzesniak ("Krzesniak") is a former Station Manager of Budget Rent-A-Car ("Budget").   After filing various administrative charges, Krzesniak initiated this action for alleged retaliation and overtime pay.  Krzesniak contends that Defendants discharged him in retaliation for exercising family leave rights and failed to pay him overtime wages and provide accurate wage statements and meal and rest breaks in accordance with state law.

One month after filing this action, Krzesniak amended his complaint to plead a class action.  Specifically, Krzesniak alleges that Defendants misclassified all Station Managers and Shift Managers as exempt from California overtime wage and break laws, such that class treatment for all Station Managers and Shift Managers is proper.  However, Krzesniak continues to prosecute his individual claims for alleged violations of state and federal family leave laws.

Krzesniak's separate claims, unique defenses, and credibility problems render him an inadequate class representative.  Substantial conflicts of interest exist between Krzesniak and the class he seeks to represent due to his parallel prosecution of the individual discharge claims.  Related to Krzesniak's conflict, his discharge allegations will expose him to unique credibility challenges and defenses, thereby distracting him and jurors from the merits of any classwide overtime claims and jeopardizing any recovery for absent class members.  Krzesniak cannot meet the basic elements for class status and the Court should, accordingly, deny certification.

## II.    STATEMENT OF FACTS

### A.    Overview Of Plaintiff's Employment

Krzesniak alleges that he worked for Budget as a Station Manager at a rental facility in the San Francisco International Airport.  (Am. Compl. at ¶ 6.)  Krzesniak alleges that he worked as a Station Manager from July 2002 until his termination on December 16, 2004.  (*Id.* at ¶¶ 6, 55.)  Defendants contend that Krzesniak was terminated for performance and productivity problems, as well as poor attendance and absenteeism.  (See Defs' Exh. 21.)  Among other things, Krzesniak's supervisors criticized him for harassing his staff and coworkers, and for having too many unexcused absences.  (See Defs' Exh. 14, 15, 17, 18, 19, 21.)

1        Prior to his discharge, Krzesniak had a series of confrontations, disputes, and

2   arguments with coworkers.  For example, in February 2004, Krzesniak threatened coworkers,

3   leaving one in tears and prompting two union representatives to intervene. (Defs' Exh.14.)  The

4   same month, Krzesniak's supervisor counseled him for his excessive abrasiveness toward

5   employees.  (*Id.*)  Krzesniak also received written warnings of his chronic attendance problems

6   on September 30, 2004, October 27, 2004, November 4, 2004, and November 19, 2004, which

7   eventually led to his termination on December 16, 2004. (Defs' Exh. 15, 17, 18, 19, 21.)  To be

8   sure, Krzesniak may contest these facts.  However, as described below, the material point is that

9   these disputes were documented long before this lawsuit and will be focal points of the case.

10        Krzesniak contends that Budget Station and Shift Managers were misclassified as

11   exempt from overtime wages and paid on a salaried basis.  (Am. Compl. at ¶ 3.)  Krzesniak

12   argues that Station and Shift Managers do not qualify for California's executive, administrative or

13   professional exemptions, and therefore he and other Station Managers are entitled to overtime

14   wages and a series of other rights applicable to hourly wage employees, such as paid rest breaks

15   and thirty minute meal breaks.  (Am. Compl. at ¶¶ 14, 26, 36, 43.)  Defendants contend that

16   Krzesniak is exempt from these laws. (Answer to Am. Compl. at ¶ 70.)  The question of overtime

17   exempt status, as explained below, is comprised of several questions pertaining to Krzesniak's

18   actual work experiences and job performance.

19        **B.     Plaintiff's Other Disputes with Defendants**

20        In addition to this lawsuit, Krzesniak has brought other claims, charges, and

21   complaints concerning his employment.  On December 24, 2004, Krzesniak filed a discrimination

22   charge with the EEOC, case no. 370-2005-00619, alleging that he suffered discrimination based

23   on his religion and national origin. (Am. Compl. at ¶ 4; Defs' Exh. 3.)  Krzesniak alleged that his

24   supervisor, whom Krzesniak identified as a "Palestinian," pulled a knife on him at work and

25   referred to him as Jewish and Polish.  (Defs' Exh. 3; Exh. 6 at D00394.)  He asserted that the

26   supervisor drew the "weapon" from its sheath, held it over his head, and "recited some words that

27   I did not understand," while a coworker (name redacted by the DFEH) "witnessed this and smiled

28   with apparent approval." (Defs' Exh. 6 at D00394.)  Thus, not only does Krzesniak attempt to

1   characterize his supervisor as a bigot and violent extremist, he believes that others in his

2   workplace approve of such behavior. The EEOC dismissed his complaint on September 1, 2005;

3   the investigation did not find any evidence to establish a violation of the statute. (Defs' Exh. 4.)

4           Krzesniak's feelings of persecution are evident from his recitation of allegations to

5   the California Department of Fair Employment and Housing (the "DFEH"), wherein he refers to

6   alleged "harassment," "intimidation," "threats," "retaliation," "ridicule," and "humiliation"

7   throughout. (Defs' Exh. 6.) According to Krzesniak, Human Resources Manager Christopher

8   Rolletta "was overcome with joy" when handing him a written warning and "grinning during this

9   humiliating time." (Defs' Exh. 21.) Krzesniak believed that his manager issued warnings in a

10  "deliberate and systemic campaign of hostility" against him, which allegedly culminated in

11  Krzesniak being "cornered" and "surrounded" in a garage upon receiving notice of his discharge.

12  (Def. Exh. 6 at D00398, 400.) When his employer allegedly denied a promotion, Krzesniak

13  claimed, "The company, however, has a history of rewarding bad behavior." (*Id.* at D00396.)

14          On February 2, 2005, Krzesniak filed another discrimination charge with the

15  DFEH, case no. E200405 A0963-00-fpe (EEOC case no. 37AA504201), this time alleging that he

16  suffered disability discrimination and failed to receive requested family leave. (Defs' Exh. 5.) In

17  addition to the same allegations of harassment, intimidation, and ridicule, Krzesniak accused his

18  employer of "spying" on him. (Defs' Exh. 10; Exh. 11 at D00559.) He had filed related charges

19  with the U.S. Department of Labor for similar alleged conduct on October 5, 2004. (Defs' Exh.

20  16.) The DFEH dismissed the charge, effective February 3, 2006, for lack of probable cause to

21  prove a violation. (Defs' Exh. 7, 8.) The DFEH concluded that Krzesniak's medical records did

22  not substantiate the alleged disability. (Defs' Exh. 7 at D00416-17.) The agency also found that

23  Krzesniak received his requested leave of absence upon receipt of proper documentation. (*Id.*

24  at D00417.) Krzesniak has trouble accepting that others may disagree with his perspective. As

25  referenced in Krzesniak's letter to the DFEH, dated February 10, 2006, he considered the agency

26  decision not to a mere error but a failure to fulfill its mission statement. (Defs' Exh. 9.) Thus, by

27  disagreeing with Krzesniak, the agency must not be doing its job, in his view.

28

1      On May 10, 2005, the California Labor Commissioner issued an administrative

2   complaint at Krzesniak's request for $57,324.15 in unpaid overtime, $1,584.52 in unpaid accrued

3   vacation, and a waiting time penalty under Labor Code § 203.   (Defs' Exh. 12.)   On

4   September 26, 2005 (three days before his hearing date, which had been continued twice), the

5   Labor Commissioner dismissed the case on the stated grounds that Krzesniak had abandoned his

6   claim. (Defs' Exh. 13.) Krzesniak does not seek any accrued, unused vacation pay in this action.

7         **C.      Plaintiff's Lawsuit**

8      Krzesniak's first five claims are a series of alleged wage law violations brought on

9   behalf of a putative class of Station Managers and Shift Managers who worked for Defendants

10   since December 28, 2001. The final two claims for discrimination and retaliation are asserted by

11   Krzesniak individually:

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

| CLAIM | PARTIES | RELIEF |
|---|---|---|
| Failure to pay wages due to alleged misclassification as overtime exempt. Cal. Lab. Code §§ 510, 515, 1194, *et seq.* | Krzesniak and current and former employees who held the positions of Station Manager or Shift Manager | Unpaid overtime compensation Interest Attorneys' fees and costs |
| Waiting time penalties for late payment of overtime wages allegedly owed at termination. Cal. Lab. Code § 203. | Krzesniak and current and former employees who held the positions of Station Manager or Shift Manager | Waiting time penalties Attorneys' fees and costs |
| Failure to provide accurate wage statements. Cal. Lab. Code § 226. | Krzesniak and current and former employees who held the positions of Station Manager or Shift Manager | Civil penalties Attorneys' fees and costs |
| Failure to provide rest breaks and meal periods to misclassified employees. Cal. Lab. Code §§ 226.7, 512 | Krzesniak and current and former employees who held the positions of Station Manager or Shift Manager | Civil penalties |
| Unfair business practices due to the alleged wage law violations. Cal. Bus. & Prof. Code § 17200, *et seq.* | Krzesniak and current and former employees who held the positions of Station Manager or Shift Manager | Unpaid wages Civil penalties Attorneys' fees and costs Restitution Injunctive relief |
| Alleged retaliation for exercising rights afforded under the Family Medical Leave Act. 29 U.S.C. § 2601, *et seq.* | Krzesniak only. | Unspecified monetary damages Emotional distress and humiliation Punitive damages |
| Alleged retaliation for exercising rights afforded under the California Family Rights Act. Cal. Govt. Code § 12945.2. | Krzesniak only. | Unspecified monetary damages Emotional distress and humiliation Punitive damages |

For the reasons set forth below, Krzesniak is an inadequate representative and, therefore, the Court cannot certify a class.  The action should be limited to his individual claims.

1 **III. ARGUMENT**

2     **A.    Plaintiff Must Show That He Is An Adequate Class Representative**

3         The Court may determine, after further investigation and discovery, that this case

4 does not meet the test of commonality and typicality, that class treatment is an inferior method of

5 adjudicating the case, or that classwide issues do not predominate. Fed. R. Civ. P. 23(a), 23(b).

6 However, classwide discovery is not a given. "Although in some cases a district court should

7 allow discovery to aid the determination of whether a class action is maintainable, the plaintiff

8 bears the burden of advancing a *prima facie* showing that the class action requirements of Fed. R.

9 Civ. P. 23 are satisfied or that discovery is likely to produce substantiation of the class

10 allegations." *Mantolete v. Bolger*, 767 F.2d 1416, 1425 (9th Cir. 1985). "Absent such a showing,

11 a trial court's refusal to allow class discovery is not an abuse of discretion." *Id.* Because the

12 information concerning Krzesniak's adequacy as a class representative is readily available to him

13 (and he fails the standard), the Court should address the question now and not allow him to

14 burden Defendants with more pre-certification discovery.

15         A class member may sue on behalf of others "only if," among other things, the

16 claims or defenses of the representative are typical of the claims or defenses of the class and the

17 representative will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a).[1]

18 Because a judgment entered in a class action will bind absent class members, due process

19 guarantees require that the Court-sanctioned representative pass muster as an adequate class

20 advocate. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998); 5 Moore's Federal

21 Practice § 23.25[2][b][vii] (since any judgment will have a *res judicata* effect against absent class

22 members, due process requires that a court strictly analyze the ability and incentive for the named

23 representative to protect the interests of all class members). The rule ensures that "the common

24 bond between the class representative's claims and those of the class is strong enough so that it is

25 fair for the fortunes of the class members to rise or fall with the fortunes of the class

26

27     [1]    "In addition to satisfying Rule 23(a)'s prerequisites, parties seeking class certification must show that the action is maintainable under Rule 23(b)(1), (2), or (3) ." *Amchem Products,*

28 *Inc. v. Windsor*, 521 U.S. 591, 614 (1997). Defendants do not presently contest whether these requirements have been met, but reserve the right to do so if further discovery is warranted.

1   representatives." *Cooper v. Southern Co.*, 390 F.3d 695, 713 (11th Cir. 2004), overruled in part

2   on other grounds, *Ash v. Tyson Foods, Inc.*, __ U.S. __, 126 S. Ct. 1195, 1197-98 (2006).

3          Adequacy of representation requires proof that: (1) Krzesniak and his attorneys do

4   not have any conflicts of interest with other class members; and (2) Krzesniak and his attorneys

5   will prosecute the class claims vigorously on behalf of the absent class members. *Hanlon*,

6   150 F.3d at 1020. For the reasons explained below, Krzesniak's inability to carry his burden on

7   the Rule 23(a) requirements precludes maintenance of the suit as a class action. *Rutledge v.*

8   *Electric Hose & Rubber Co.*, 511 F.2d 668, 673 (9th Cir. 1975).

9          **B.     Plaintiff's Conflicts Reveal That He Is An Inadequate Representative**

10          "The premise of a class action is that litigation by representative parties

11   adjudicates the rights of all class members, so basic due process requires that named plaintiffs

12   possess undivided loyalties to absent class members." *Broussard v. Meineke Discount Muffler*

13   *Shop, Inc.*, 155 F.3d 331, 338 (4th Cir. 1998). The class representative is a fiduciary and has a

14   duty to act solely in the interests of the class. *Georgine v. Amchem Products, Inc.*, 83 F.3d 610,

15   631 (3d Cir. 1996). The Court "must be certain" that the representative will discharge his

16   fiduciary duties to the class. *Burkhalter Travel Agency v. MacFarms Int'l, Inc.*, 141 F.R.D. 144,

17   153-54 (N.D. Cal. 1991).

18          Consistent with the fiduciary approach to class representation, a named plaintiff

19   must have the same interests as the class. *Windsor*, 521 U.S. at 625-26. This means that the class

20   representative's claims must be sufficiently interrelated to, and not antagonistic with, the class

21   claims. *Marcus v. Kansas Dept. of Revenue*, 206 F.R.D. 509, 512 (D. Kan. 2002). No class

22   should be certified when any interests are antagonistic, because the preclusive effect of a verdict

23   may deprive unnamed class members of their right to be heard. *Smith v. Babcock*, 19 F.3d 257,

24   265 (6th Cir. 1994); *Brown v. Ticor Title Ins. Co.*, 982 F.2d 386, 390 (9th Cir. 1992) (there must

25   be shared interests between representatives and class members and an absence of antagonism).

26          Krzesniak's interests are not aligned with the class members. As explained below,

27   his personal interest in his individual retaliation suit creates a conflict of interest and exposes the

28   class members to undue risks caused by his unique defenses, credibility problems, and personal

1    animosity toward Defendants. Additionally, Krzesniak has a conflict with current employees of

2    Defendants, as their respective goals in the litigation may differ. Even if one of the conflicts was

3    insufficient on its own to render Krzesniak inadequate, the collective weight of these clear

4    conflicts preclude him from serving as a class representative.

5              **1.      Plaintiff's Individual Retaliation Claim Creates A Direct Conflict**

6              The face of the pleadings reveal a direct conflict between Krzesniak and the class.

7    Krzesniak initially pursued individual administrative charges and a lawsuit for individual relief on

8    his overtime and family leave allegations. He then amended the complaint to add class claims for

9    overtime wages, though he continues to prosecute the same individual claims arising from his

10   discharge from employment. Krzesniak's concurrent pursuit of individual and class claims (in

11   the same or separate actions) render him inadequate to represent this class. 5 Moore's Federal

12   Practice § 23.25[2][b][vii] at 23-129.

13             The adequacy inquiry "serves to uncover conflicts of interest between named

14   parties and the class they seek to represent." *Windsor*, 521 U.S. at 625. Where there is "a

15   conflict that goes to the very subject matter of the litigation, it will defeat a party's claim of class

16   representative status." *Global Minerals & Metals Corp. v. Superior Court*, 113 Cal. App. 4th

17   836, 851 (2003). Even *potential* conflicts that risk antagonistic interests are grounds to deny

18   certification. *Plekowski v. Ralston Purina Co.*, 68 F.R.D. 443, 452 (M.D. Ga. 1975), *aff'd*,

19   557 F.2d 1218 (5th Cir. 1977).

20             "Where the class representative's zeal may be tempered by his own financial

21   prospects, he is not an adequate representative." *Goetsch v. Shell Oil Co.*, 197 F.R.D. 574, 579

22   (W.D. N.C. 2000). Consequently, courts often disqualify named plaintiffs who simultaneously

23   pursue individual claims for relief. For instance, in *Hornreich v. Plant Indus., Inc.*, 535 F.2d 550,

24   551 (9th Cir. 1976), the Ninth Circuit affirmed dismissal of the plaintiff's derivative suit because

25   he was an inadequate representative of similarly situated shareholders; the plaintiff's derivative

26   suit was an attempt to leverage individual claims he had against the same defendants. *See also*

27   *Larson v. Dumke*, 900 F.2d 1363, 1367 (9th Cir. 1990); *Kurczi v. Eli Lilly & Co.*, 160 F.R.D. 667,

28   678-79 (N.D. Ohio 1995) ("there is a significant risk that those plaintiffs would not adequately

MOTION TO DISQUALIFY PLAINTIFF AS CLASS REP          8          Case No. C-05-05156 MEJ

1   represent those absent class members who have not joined in the parallel state action" due to

2   potential conflicts in settlement discussions, litigation strategy, and incentives); *Whittum v.*

3   *Saginaw County*, 2004 WL 768901 (E.D. Mich. 2004) (named plaintiffs with separate claims

4   against the defendant had "potential conflict of interest" which rendered them inadequate

5   representatives).  *Cf. Lau v. Standard Oil Co.*, 70 F.R.D. 526, 528 (N.D. Cal. 1975) (fiduciary

6   conflict existed where class counsel had separate personal claims against the defendant).

7           Even if a lead plaintiff does not overtly attempt to sell out the class to increase his

8   own personal recovery, the prosecution of individual retaliation claims in conjunction other class

9   claims are sufficient to render him an inadequate representative:

10              Plaintiffs' complaints of the retaliatory selection of other females or
                blacks, allegedly chosen in preference to them because of their
11              having filed charges, is clearly not a class issue.    Indeed,
                preoccupation with peculiar retaliatory wrongs allegedly done to one
12              may well make such person an inadequate representative of the class.

13   *Strong v. Arkansas Blue Cross & Blue Shield, Inc.*, 87 F.R.D. 496, 510-11 (E.D. Ark. 1980)

14   (citations omitted).  *See also Moses v. Avco Corp.*, 97 F.R.D. 20, 24 (D. Conn. 1982); *Noonan v.*

15   *Indiana Gaming Co.*, 217 F.R.D. 392, 397-98 (E.D. Ky. 2003) (the possibility of different causes

16   of action or theories, among other factors, refuted the named plaintiff's assertion that she would

17   fairly represent all of the class members).

18          Krzesniak has tied the class claims to his individual and unrelated discharge claims

19   for retaliation.  His amended complaint, asserting class claims on behalf of others, was clearly an

20   afterthought or ancillary matter, given his history of individual charges and concurrent retaliation

21   claims against Defendants.  Even if Krzesniak does not currently have a direct conflict of interest,

22   there is no doubt that a potential conflict exists.  Krzesniak may simply use his class action

23   allegations to leverage a larger settlement of his individual retaliation claims — monetary relief

24   which only he will recover, perhaps at the expense of absent class members:

25              [C]lass actions create the opportunity for legalized blackmail:
                a greedy and unscrupulous plaintiff might use the threat of a large
26              class action, which can be costly to the defendant, to extract a
                settlement far in excess of the individual claims' actual worth.
27

28

1   *In re General Motors Corp. Pick-Up Truck Fuel Tank Litig.*, 55 F.3d 768, 784-85 (3d Cir. 1995).

2   At best, the concurrent prosecution of Krzesniak's individual retaliation claim presents the danger

3   that he will be distracted from his fiduciary duties to the class. Because Krzesniak's pursuit of

4   individual claims renders him an inadequate class representative, the Court should deny class

5   status and limit the scope of this lawsuit to Krzesniak's individual claims.

6   **2.    Plaintiff Has Undue Personal Animus Toward Defendants**

7   A common factor which courts identify as a disqualifying characteristic is whether

8   the named plaintiff is unduly antagonistic toward the defendant:

9
10   > While the law is true that a plaintiff's small personal animus is
   > insufficient to render an otherwise qualified class representative
   > inappropriate, an unduly antagonistic litigant, or a litigant who
   > bears a grudge against the defendant is not an appropriate class
11   > representative. ***Preoccupation with peculiar retaliatory wrongs
   > allegedly done to one may well make such a person an inadequate
12   > representative of the class***.

13   *Kamerman v. Ockap Corp.*, 112 F.R.D. 195, 197 (S.D.N.Y. 1986) (citations and quotations

14   omitted, emphasis added).

15   The principle was illustrated in *Norman v. ARCS Equities Corp.*, 72 F.R.D. 502

16   (S.D.N.Y. 1976). Although the court found that the plaintiff's animus toward the defendants was

17   "not as deep, bitter and lasting as defendants have argued," it concluded that "any such personal

18   vendetta intrudes unavoidably upon the fiduciary duty of the class representative in litigation of

19   this sort," thus disqualifying the representative as a named plaintiff. *Id*. at 506. The court noted

20   that, in addition to the representative's duty to prosecute the action vigorously, the representative

21   also has the duty to use wise judgment in negotiating and approving a fair and proper settlement

22   at the appropriate time. When the representative may act out of ill-will, it is inevitable that the

23   defendants will respond in kind, negating any ability to be persuaded by even reasonable

24   settlement demands. "A class representative who is motivated by spite against a defendant is no

25   different than one which has an adverse pecuniary interest." *Id*.

26   Krzesniak's personal animus toward Defendants is palpable. He alleges that his

27   supervisor threatened him with a knife while a coworker smiled in approval. He contends that the

28   same man discriminated against him based on national origin and religion, drawing upon historic

MOTION TO DISQUALIFY PLAINTIFF AS CLASS REP          10                    Case No. C-05-05156 MEJ

1   conflicts between Palestinians and Jews.  Krzesniak accused his employer of engaging in a

2   "campaign" of hostility, retaliation, and spying.  After receiving a series of disciplinary warnings

3   and eventually being terminated, he felt harassed, humiliated, and embarrassed.  Krzesniak's

4   feelings of persecution go so far as characterizing his managers as sadistic, allegedly deriving

5   enjoyment from disciplining and discharging him and rewarding "bad behavior."  Rather than

6   simply terminating him, Krzesniak asserts that managers "accosted him," began to "throng

7   around" him, "pursued" him "throughout the garage" and "down two floors," and finally

8   "surrounded" and "cornered" him.  (Defs' Exh. 6 at D00400.)  He contends that "others watched"

9   this "public humiliation" at the time of his discharge.  Regardless of whether Krzesniak's

10  allegations have a shred of truth to them (which Defendants will disprove), the material fact is

11  that Krzesniak harbors an undeniable hatred toward Defendants and their managers.

12          Further contributing to Krzesniak's obvious feelings of bitterness, all of his

13  various administrative charges have been unsuccessful.   Indeed, in a moment revealing

14  Krzesniak's inability to approach his claims with any objectivity, he accused the DFEH of

15  neglecting his discrimination charges and failing to abide by its mission to protect citizens from

16  unlawful discrimination and retaliation.  (Defs' Exh. 9 at D00388.)  His hostility toward anyone

17  who disagrees makes him unsuited to serve as a fiduciary for the class.

18          Krzesniak is pursuing an individual agenda to avenge his grievances and perceived

19  slights.  He did not plead class claims when he initiated this action; he developed the idea of

20  expanding his vendetta to other Budget locations after-the-fact, perhaps in an unfortunate effort to

21  harm Defendants with expensive litigation or extract a better resolution for himself.  *General*

22  *Motors*, 55 F.3d at 784-85. Due to the high probability that a desire for revenge has or will cloud

23  Krzesniak's judgment and conduct in this action, he is an inadequate class representative.

24          **3.      Unique Defenses And Credibility Challenges Will Infect The Merits Of**

25                   **The Class Claims**

26          Woven with the typicality question, Krzesniak's ability to adequately represent the

27  class is also undermined by the irreconcilable link between the defense to the overtime claim and

28  the motives which Krzesniak and Defendants ascribe to one another.  Since Defendants may

MOTION TO DISQUALIFY PLAINTIFF AS CLASS REP          11          Case No. C-05-05156 MEJ

1  defeat Krzesniak's overtime claim by showing that he unreasonably and repeatedly failed to

2  perform his management functions, and Krzesniak in turn asserts that Defendants issued

3  disciplinary warnings and terminated him as a form of unlawful retaliation, the defense and

4  credibility questions applicable to Krzesniak will jeopardize the merits of all class member

5  overtime claims. He cannot serve as class representative.

6      Typicality will not be found "where a putative class representative is subject to

7  unique defenses which threaten to become the focus of the litigation." *Gary Plastic Packaging*

8  *Corp. v. Merrill, Lynch, Pierce, Fenner & Smith, Inc.*, 903 F.2d 176, 180 (2d Cir. 1990). *See also*

9  *J.H. Cohn & Co. v. American Appraisal Assoc., Inc.* 628 F.2d 994, 998-99 (7th Cir. 1980). Class

10  certification should therefore be denied when there is a "danger that absent class members will

11  suffer if their representative is preoccupied with defenses unique to [her]." *Baffa v. Donaldson,*

12  *Lufkin & Jenrette Securities*, 222 F.3d 52, 59-60 (2d Cir. 2000). Similarly, when any named

13  plaintiffs are vulnerable to credibility attacks, they are inadequate class representatives. *Kline v.*

14  *Wolf*, 702 F.2d 400, 403 (2d Cir. 1983). A named plaintiff "simply cannot adequately represent

15  members of a class with whom he has material factual and legal differences." *Halaba v.*

16  *Worldcom Network Serv., Inc.,* 196 F.R.D. 630, 643 (N.D. Okla. 2000).

17      Defendants contend that Krzesniak was exempt from state overtime wage laws as

18  a management or "executive" employee. Cal. Lab. Code § 515. The exemption applies to an

19  employee: (a) whose responsibilities and duties involve management of the enterprise in which

20  he is employed (or a recognized department or subdivision thereof); (b) who customarily and

21  regularly directs the work of two or more employees; (c) who has the authority to hire or fire

22  other employees (or whose suggestions and recommendations as to the hiring or firing and as to

23  the advancement and promotion or any other change of status of other employees will be given

24  particular weight); (d) who customarily and regularly exercises discretion and independent

25  judgment; and (e) who is primarily engaged in duties which meet the test of the exemption. Cal.

26  I.W.C. Wage Order No. 9-2001 § 1(A)(1).

27      Notwithstanding what Krzesniak claims to have done in his job, he cannot "evade

28  a valid exemption" by failing to perform his job duties. *Ramirez v. Yosemite Water Co*., 20 Cal.

1   4th 785, 802 (1999). The Court will consider whether his work time and activities diverged from

2   his employer's "realistic expectations" and the "realistic requirements of the job." *Id.* at 801-803.

3   Relevant evidence includes whether the employer notified him of its "displeasure" with his

4   performance of the required duties and warned of his "substandard performance." *Id. See also*

5   *Jimenez v. Domino's Pizza, Inc.,* __ F.R.D. __, 2006 WL 2788671, *7 (C.D. Cal. 2006) [denying

6   certification because, among other reasons, job duty analyses "necessarily require inquiries into

7   credibility relating to why certain managers spent more or less time on the various tasks"].

8           Defendants will oppose the overtime and wage claims by showing that Krzesniak

9   did not perform his job duties, failed to manage his staff, harassed his employees, and had chronic

10  attendance problems. (See Defs' Exh. 14, 15, 17, 18, 19, 21.) In response, Krzesniak asserts that

11  these criticisms and efforts to correct his job performance were motivated by retaliation, anti-

12  Semitism, national origin discrimination, and a cruel desire to personally humiliate him.  To

13  prove his retaliation claims, Krzesniak may decide to allege that he was held to different

14  standards and required to perform different job duties than similarly situated Station Managers

15  and Shift Managers. *Elkins v. American Showa, Inc.,* 219 F.R.D. 414, 421-22 (S.D. Ohio 2002).

16  Furthermore, Defendants intend to make Krzesniak's personal hostility toward his coworkers,

17  supervisors, and Defendants an issue for impeachment:  he seeks revenge for grievances and

18  perceived slights, not an adjudication of whether his job qualifies for overtime wages. Krzesniak

19  cannot put absent class members in the middle of his personal dispute.  The Court should deny

20  Krzesniak's demand for representative status.

21          **4.     Plaintiff Cannot Represent Current Managers**

22          The first amended complaint demands injunctive relief to "cease and desist from

23  unlawful activities in violation of California Business and Professions Code § 17200."  (Am.

24  Compl. at ¶ J.) Yet former employees, like Krzesniak, have only one tangible interest: monetary

25  recovery for past alleged harm, not an injunction for future compliance.  This divergence creates

26  another conflict for Krzesniak's representation.

27          The conflict between Plaintiffs and substantial segments of the class goes to the

28  adequacy of representation under Rule 23(a)(4). *General Tel. Co. v. Falcon,* 457 U.S. 147, 157

1   n.13 (1982). Former employees tend to have interests which differ from current employees and,

2   hence, are an inadequate representatives. *Jordan v. Hawaii Govt. Employees' Ass'n*, 472 F. Supp.

3   1123, 1132 n.30 (D. Haw. 1979) (retired employees lack standing to seek injunctive relief on

4   behalf of current employees and therefore would not "fairly and adequately protect the interests

5   of the class."); *Elkins*, 219 F.R.D. at 423 ("[T]he fact that only two [of five] named plaintiffs

6   remain employed by defendant could lead to plaintiffs placing an undue emphasis on damages

7   rather than focusing on obtaining an injunction against current practice"). Courts have denied

8   certification of "damages classes" under Rule 23(b)(3) because such conflicts between persons

9   rendered the proposed representative inadequate under Rule 23(a)(4). *Morgan v. Metro Dist.*

10  *Comm'n.*, 222 F.R.D. 220, 236 (D. Conn. 2004) ("It is difficult to see how these former

11  employees could meaningfully benefit from the declaratory relief Plaintiffs seek"); *Southern*

12  *Snack Foods, Inc. v. J&J Snack Foods Corp.*, 79 F.R.D. 678 (D. N.J. 1978).

13          A conflict exists between those members of the class who are currently employed

14  by Defendants and those who were but are no longer employed. Current employees are perhaps

15  most concerned with ensuring that they are properly compensated in the future, *i.e.*, that their

16  paychecks accurately compensate them for all of the income that the Labor Code and Wage

17  Orders dictate they be paid, tomorrow and for every day in the future. As current employees,

18  they have an incentive to maximize future income, which, depending on the length of their

19  employment, will eclipse any payment for past hourly wages and penalties. *Windsor*, 521 U.S. at

20  625. By contrast, former employees are most interested in "generous immediate payments." *Id.*

21  at 626. *See also Armstrong v. Powell*, 230 F.R.D. 661, 678 (W.D. Okla. 2005) (potential conflict

22  existed between "the former employees and current employees, as the former employees may

23  focus on the potential for monetary relief because they would not benefit from the injunctive

24  relief sought by the current employees").

25          The conflict between current and former employees is compounded by the claims

26  asserted in the pleadings. For example, former employees may have a keen interest in expending

27  time and resources on the second claim for waiting time penalties (*i.e.*, the alleged failure to pay

28  all earned wages at termination), while existing employees, by definition, cannot recover any

1   penalties and have no interest in waiting time penalties. *See* Cal. Labor Code § 203.  Similarly,

2   former employees have an interest in maximizing their demand for punitive damages and civil

3   penalties, while current employees may recognize that financial harm to Defendants' businesses

4   may adversely affect their ability to obtain a future bonus or annual raise.   The fourth claim

5   involving the alleged failure to provide employees with meal periods and rest breaks would, if

6   proven, provide all eligible class members with a monetary recovery.   But it is only current

7   employees, however, who may desire that the company be subject to a prospective order

8   commanding it to provide meal periods and rest breaks in the future.

9   Krzesniak's status as a former employee creates a conflict with current employees

10   who may place more importance on declaratory and injunctive relief instead of monetary relief.

11   As a former employee, it is unlikely that Krzesniak would have brought this lawsuit if only

12   injunctive relief could be awarded.  Such conflicts between the named representative and the class

13   serve to render Mr. Krzesniak an inappropriate representative.

14   **IV.     CONCLUSION**

15   Plaintiff cannot carry his burden of establishing that he meets the requirements of

16   Federal Rule of Civil Procedure 23.  Accordingly, the Court should reject Krzesniak's attempt to

17   serve as the representative plaintiff for the class claims, or, in the alternative, the Court should

18   dismiss the five claims for relief that are asserted as class claims.

20   Date: December 14, 2006          LITTLER MENDELSON, P.C.

22                                    By:

                                      Michael Hoffman
                                      Attorneys for Defendants

23   Firmwide:81675318.2 035682.1035