**United States District Court**
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

STANLEY KRZESNIAK, individually, on behalf of all others similarly situated, and on behalf of the general public,

    Plaintiff(s),

vs.

CENDANT CORP., CENDANT CAR RENTAL GROUP, INC., CENDANT CAR RENTAL OPERATIONS SUPPORT, INC., and BUDGET RENT A CAR SYSTEM, INC.,

    Defendant(s).

_____/

No. C 05-05156 MEJ

**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR CLASS CERTIFICATION**

## I.  INTRODUCTION

Before the Court is plaintiff Stanley Krzesniak's ("Plaintiff") Motion for Class Certification, filed May 10, 2007.  (Doc. #41.)  The issue for the Court to determine is whether Plaintiff has met the requirements of Rule 23 of the Federal Rules of Civil Procedure ("FRCP") such that certification of a class is appropriate. After careful consideration of the parties' papers, relevant legal authority, and good cause appearing, the Court GRANTS Plaintiff's motion as to station and shift managers, and DENIES Plaintiff's motion as to branch managers for the reasons set forth below.

## II.  BACKGROUND

**A.      Factual Background**

From August 5, 2002 until December 16, 2004, Plaintiff worked as a station manager, now known as shift manager (collectively, "SM"), at Budget Rent A Car ("Budget").  Plaintiff primarily worked at Budget's San Francisco Airport location, but also for short periods of time at two of

Budget's other San Francisco locations - Post Street and Van Ness Avenue.  In June 2004, Plaintiff took a leave of absence to spend time with his newborn child.  After he returned from leave, he was subjected to discipline for instances of absenteeism, (Rolletta Decl., Ex. 15), and was terminated on December 16, 2004.  Plaintiff filed the present cause of action on December 13, 2005, naming Budget, Cendant Corporation, Cendant Car Rental Group, LLC, and Cendant Car Rental Operations Support, Inc. (collectively, "Defendants") as defendants in this action.

    1.    Budget Locations

From December 13, 2001, Defendants operated thirty-six Budget locations in California that employed SMs.  (Rukin Decl. Ex. A.)  In their opposition, Defendants provided the following sample of how Budget locations vary in staff size, volume of rentals, and operations:

| Location | Union | Staff Size | Mngrs. | 2006 Rentals | Avg. Fleet | Bus Drivers |
|----------|-------|------------|--------|--------------|------------|-------------|
| Los Angeles Airport | Yes | 156 | 10 | 258,311 cars | 5,014 cars | Yes |
| San Francisco Apt. | Yes | 60 | 5 | 111,857 cars | 1,664 cars | No |
| Ontario Airport | Yes | 45 | 3 | 60,734 cars | 803 cars | No |
| Sacramento Airport | Yes | 43 | 3 | 80,367 cars | 987 cars | No |
| Burbank Airport | Yes | 27 | 2 | 44,263 cars | 508 cars | Yes |
| Palm Springs Apt. | No | 19 | 2 | 28,864 cars | 540 cars | No |
| Long Beach Apt. | Yes | 13 | 2 | 32,612 cars | 455 cars | No |
| S.F. - Mason St. | Yes | 20 | 3 | 23,656 cars | 264 cars | No |
| S.F. - Van Ness St. | Yes | 6 | 1 | 9,189 cars | 123 cars | No |
| Van Nuys | No | 10 | 1 | 6,416 cars | 156 cars | No |
| Anaheim | No | 5 | 1 | 6,165 cars | 96 cars | No |
| Pasadena | No | 5 | 1 | 7,678 cars | 132 cars | No |
| Torrance | No | 5 | 1 | 7,691 cars | 137 cars | No |

(Rolletta Decl at 4-5; Ex. 8, Ex. 16-18.)

Budget operates its locations and trains its workforce using standardized policies and procedures.  Budget's car reservation system is managed through WIZARD, a centralized computer database, and Budget managers track car reservations through this system using standardized

1  procedures set forth in company-wide operations manuals.  (Rukin Decl., Exs. C at 29:22-30:2, J, K,
2  and L.)

3        Budget has also promulgated written service standards for managers and hourly employees at
4  all company locations.  These written standards - in the form of "Operations Bulletins" - regulate
5  business operations, from automobile maintenance to the appearance of employee name tags and the
6  manner in which customers should be greeted.  (Rukin Decl., Ex. M.)  Budget's Employee
7  Handbook also sets forth uniform policy standards on issues ranging from codes of conduct and fair
8  employment practices to timekeeping obligations and company vehicle use.  (Rukin Decl., Ex. I at
9  38-40, 148, 158.)

10       Budget provides a training program for its SMs, where they are instructed on the policies and
11  procedures of the organization, including the WIZARD system, SM procedures and requirements,
12  and the job functions of all employees the SMs will supervise.  (Rukin Decl., Ex. C at 27:4-28:10.)
13  SMs are not retrained when they move from one location to another.  (Rukin Decl., Ex. C at 28:8-
14  29:10.)  Budget also provides SMs with standardized procedures on how to perform their jobs.  For
15  example, SMs fill out their paperwork by following the instructions set forth in a standardized
16  "Station Manager Report" manual.  (Rukin Decl., Ex. C at 30:20-31:14, 88:17-89:16.)

17       2.    Station and Shift Managers

18       All Budget SMs are subject to a single job description.  (Rukin Decl., Ex. B at 23:22-24; Ex.
19  H; Rolletta Decl., Exs. 4-5.)  As part of his deposition, Josh Gonzalez, Budget's FRCP 30(b)(6)
20  deponent concerning manager duties, provided a document entitled "Job Description: Shift
21  Manager."  This document provides a job summary, list of essential duties and responsibilities,
22  preferred qualifications, and responsibility scope for SMs at Budget's locations.  (Rukin Decl., Ex.
23  H.)  Gonzalez also confirmed in his deposition that SMs performed the following range of duties (all
24  deposition cites are in reference to Gonzalez' deposition, as provided in the Rukin Decl., Ex. C):
25  ///
26  ///
27  ///
28                                        3

| Duties Performed by SMs | Gonzalez Depo. |
|---|---|
| Meeting weekly with the airport manager or district manager | 35:13-25 |
| Supervising the work of the customer service representatives ("CSR") | 38:9-12 |
| Scheduling the CSRs and other hourly employees | 60:23-61:1 |
| Reviewing time reports and passing them on to payroll | 38:13-39:25 |
| Training other employees at the location | 40:1-7 |
| Renting cars to customers | 41:12-23 |
| Counting the cars at the location (several times a day); categorizing the available cars | 44:12-25 |
| Reading and responding to email | 45:13-24 |
| Filling in for hourly employees going on breaks | 45:25-46:9 |
| Looking at what the other car companies are charging for gas | 46:10-47:3 |
| Preparing a game plan (indicating what the pricing of cars is, and how many reservations there are) | 47:4-48:5 |
| Meeting with the staff | 48:6-18 |
| Walking around the location making sure that the CSRs have enough supplies | 49:9-25 |
| Cleaning cars and preparing them for the ready line | 32:1-9, 58:18-59:6 |
| Assisting customers when they have complaints | 54:18-20 |
| Entering data into the Daily Operations Report | 42:23-43:22 |

(Rukin Decl., Ex. C.)

     3.    <u>Branch Managers</u>

     As to branch managers, neither party provided a job description, so the Court looks to the evidence submitted by both sides.  In his declaration, Christopher Rolletta, Budget's Human Resources Director, states that branch managers are the senior managers at Budget's off-airport locations, and that SMs working at these locations generally report to branch managers.  (Rolletta Decl. ¶ 4.)  However, the evidence before the Court tends to make this distinction less clear.  In her declaration in opposition to Plaintiff's motion, Constance Stephens, who was a branch manager at Budget's Van Ness location in San Francisco, states that she "was the sole management employee at Van Ness," and that a SM would manage the operation when she was not working.  (Stephens Decl.,

4

¶¶ 19-20.)  Stanley Brown, a Budget employee from 1995 to 2004, attests that he worked as both a Customer Service Representative and manager[1], but he performed the same or substantially similar jobs regardless of his title.  (Brown Decl., ¶¶ 1, 3.)

### 4.    Class Allegations

In his amended complaint, Plaintiff alleges that SMs and branch managers were misclassified as exempt from overtime wages and paid on a salaried basis.  (Am. Compl. at ¶ 3.)  In its 30(b)(6) deposition, Budget testified that SMs generally worked "approximately 40 to 50 hours a week." (Rukin Decl., Ex. C at 66:15-19.)  At times, Budget's managers worked fifty-five hours per week or more.[2]  (Rukin Decl., Ex. D.)

Plaintiff also alleges that Budget did not schedule meal breaks for their managers and did nothing to make sure that managers took the thirty-minute meal periods or ten-minute rest breaks required by California law.  In its 30(b)(6) deposition, Budget testified that SMs are required to take lunch breaks, but they are not scheduled at a particular time and are not required to take breaks of thirty minutes or more.  (Rukin Decl., Ex. C at 71:10-72:18.)  Defendants provided the declarations of several of Budget's managers, all of whom testify as to varying levels of rest and meal breaks. (Smith Decl. at ¶ 28 - "[SMs] *can* take at least a 30 minute duty free meal period each day, as well as rest breaks"; Stephens Decl. at ¶ 17 - "[SMs] at SFO all *receive* at least 30 minutes for a lunch break"; Gustus Decl. at ¶ 23 - "My [SM] *regularly* takes at least a 30 minute lunch break during the day, and his lunch breaks are generally 1 hour"; Moyle Decl. at ¶ 29 - "As a [SM], I *was able* to take my lunch breaks, and I *usually* did"; and Tlatilpa Decl. at ¶ 22 - My [SM] *is able* to take regular one hour lunch periods.")

---

[1] On May 31, 2007, Defendants filed a Motion to Strike Brown's declaration.  (Doc. #66.)  Although Brown states that he worked as a "manager," Defendants clarify that he worked as a branch manager.  (Doc. #66 at 2:16.)  The Court shall address Defendants' motion below.

[2] In their Opposition, Defendants direct the Court's attention to the declaration of Imad Najjar in support of its contention that SMs in some facilities were scheduled to work only forty hours per week.  (Hoffman Decl., Ex. 34 at 27:9-21.)  However, in that portion of his testimony, Najjar states that SMs worked a minimum of eight hours with no maximum. Although he goes on to state that they normally worked eight-hour shifts, he does not state how many days they worked. He also does not explicitly state that SMs did not work more than forty hours.  Thus, the Court is unable to accept Defendants' assertion.

5

**United States District Court**
For the Northern District of California

**B.      Procedural Background**

On December 13, 2005, Plaintiff filed his initial Complaint alleging that Budget: (1) misclassified him as a supervisory employee exempt from overtime pay and violated California's wage and hour laws by failing to pay required overtime, failing to pay overtime wages due upon termination, failing to provide itemized wage statements, and failing to provide rest breaks and meal periods; and (2) violated California and federal law by retaliating against him for taking family leave to spend time with his wife and newborn child.

On January 6, 2006, Plaintiff filed an Amended Complaint to assert the wage and hour claims as a class action, on behalf of himself and on behalf of all persons or entities proximately damaged by Defendants, including "Plaintiff and all other persons who are or have been employed by Defendants, or any one of them, as Station Managers (or equivalent positions), at Budget Rent-A-Car facilities in the State of California at any time since December 28, 2001." (Am. Compl. Plaintiff's proposed class action claims are: (1) Unlawful Failure to Pay Required Overtime (Cal. Labor Code §§ 510, 1194, 1198; Wage Order No. 9-2001); (2) Waiting Time Penalties (Cal. Labor Code §§ 201-203); (3) Failure to Provide Itemized Wage Statements (Cal. Labor Code § 226); (4) Failure to Provide Rest Breaks and Meal Periods (Cal. Labor Code §§ 226.7, 512; Wage Order No. 9); and (5) Unfair Practice Under the California Unfair Competition Act (California Business and Professions Code §§ 17200-17208). (Am. Compl. at 4). As in his original complaint, Plaintiff also asserted the unlawful retaliation claims as an individual. Plaintiff's individual retaliation claims: (1) Retaliation in Violation of the Family and Medical Leave Act (29 U.S.C. § 2601 et seq.), and (2) Retaliation in Violation of the California Family Rights Act (Cal. Gov't Code § 12945.2 et seq.).

On December 14, 2006, Defendants filed a Motion to Disqualify Plaintiff as a Class Representative. The Court denied Defendants' motion on February 27, 2007, finding that the record before it was inadequate to make such a determination prior to Plaintiff filing a motion to certify a class.

On May 10, 2007, Plaintiff filed the present motion, as well as the Declarations of Sterling Brown, Steven Tindall, Peter Rukin, and his own declaration in support thereof. In his motion,

6

**United States District Court**
For the Northern District of California

1    Plaintiff states that the proposed class includes SMs and branch managers.

2          On May 24, 2007, Defendants filed an Opposition to Plaintiff's motion, as well as the

3    Declarations of John Cort, Christopher Rolletta, Michael Hoffman, Holly Gustus, Dean Moyle,

4    Gregory Smith, Hugo Stanley, Constance Stephens, and Ramiro Tlatilpa in support thereof.

5          On May 31, 2007, Plaintiff filed a Reply, as well as the Supplemental Declarations of Peter

6    Rukin and Steven Tindall, and his own declaration in support thereof.

7          Also on May 31, 2007, Defendants filed an Objection and Motion to Strike the Declaration

8    of Sterling Brown.  On June 6, 2007, Defendants also filed Motions to Strike the Unsigned

9    Declaration of Edgar Hernandez and portions of the Supplemental Declaration of Steven Tindall.

10         On June 28, 2007, the Court held a hearing on Plaintiff's.  Peter Rukin and Steven Tindall

11   appeared on behalf of Plaintiff; Michael Hoffman appeared on behalf of Defendants.

12                          **III.   EVIDENTIARY ISSUES**

13   **A.        Request for Judicial Notice**

14         As part of their Opposition, Defendants request that the Court take judicial notice of the

15   contents of: (1) a declaration from the California Department of Fair Employment and Housing

16   ("DFEH") in response to Defendants' public records request; (2) a copy of the Equal Employment

17   Opportunity Commission ("EEOC") charge no. 370-2005-00619; (3) a copy of the EEOC notice of

18   dismissal as to charge no. 370-2005-00619; (4) a copy of DFEH charge E2004-05 A0963-00-fpe; (5)

19   a copy of the letter and chronology, dated December 8, 2005, from Plaintiff to the DFEH regarding

20   his charge(s); (6) a copy of a DFEH letter, dated January 20, 2006, explaining its basis for closing

21   the case on charge no. E200405 A0963-00-fpe; (7) a copy of DFEH notice of case closure regarding

22   charge no. E2004-05 A0963-00-fpe; (8) a copy of the letter from Plaintiff, dated February 10, 2006,

23   to the DFEH regarding his charges; (9) a copy of the letter from Plaintiff, dated December 15, 2004,

24   to the DFEH regarding his charges; (10) a copy of the letter from Plaintiff, dated November 4, 2004,

25   to the DFEH regarding his charges; (11) copies of the Complaint, *Stan Krezesniak v. Cendant Car*

26   *Rental Group Inc., et al.,* California Labor Commissioner case no. 11-30725 LK, and notices related

27   to said Complaint; and (12) a copy of a Notice of Dismissal of said Complaint   Having received no

28                                         7

opposition to Defendants' request and good cause appearing, the Court GRANTS Defendants' request for judicial notice.

**B.      Defendants' Motions to Strike**

      1.      <u>Declaration of Sterling Brown</u>

On May 31, 2007, Defendants filed an Objection and Motion to Strike Declaration of Sterling Brown.  (Doc. #66.)  Defendants seek an order striking Brown's declaration on two grounds: (1) Plaintiff failed to disclose him as a potential witness before the discovery cut-off; and (2) Brown worked as a branch manager and not as a SM.  FRCP 37 provides for the exclusion of undisclosed evidence as a sanction for failing to disclose witnesses; however, a court has discretion to impose "other appropriate sanctions," either in addition to or instead of exclusion.  Fed. R. Civ. P. 37(c)(1). Even undisclosed evidence should not be excluded "if the parties' failure to disclose the required information is substantially justified or harmless."  *Yeti by Molly Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001) (citing Fed. R. Civ. P. 37(c)(1)).

Upon review of Defendants' request, the Court shall not strike Brown's declaration. Although Plaintiff failed to disclose him as a potential witness, Defendants previously opposed Plaintiff's request for managers' contact information.  (Doc. #34.)  The Court denied Plaintiff's request, in part based on Defendants' arguments.  (Doc. #35.)  Thus, if Plaintiff was unable to locate and question Brown in part because Defendants did not provide his information, the failure to disclose appears justified.  Further, although Brown worked as a branch manager, his testimony may still be relevant.  Just as Defendants submitted the declarations of its airport and district managers, so too should Plaintiff be allowed to submit the declarations of managers other than SMs.

      2.      <u>Unsigned Declaration of Edgar Hernandez</u>

On June 6, 2007, Defendants filed an Objection and Motion to Strike the Unsigned Declaration of Edgar Hernandez.  (Doc. #73.)  Defendants seek an order striking Hernandez's declaration on four grounds: (1) he did not sign the declaration under penalty of perjury; (2) his purported statements in the document constitute inadmissible hearsay; (3) Plaintiff failed to disclose him as a potential witness; and (4) Plaintiff's attorneys breached duties to a putative class member by

8

1    filing an unsigned declaration which Mr. Hernandez did not authorize.

2          Plaintiff also filed an Opposition to Defendants' motion on June 6.  (Doc. #78.)  Plaintiff

3    argues that he did not submit Hernandez's declaration for the truth of the matters asserted therein;

4    rather, he submitted it in the context of his counsel's description of their efforts to obtain testimony

5    from class members.  The Court finds the use of the declaration proper for this purpose.  However,

6    as the statements contained therein are hearsay, the Court shall not consider Hernandez's unsigned

7    declaration for any purpose other than Plaintiff's counsel's efforts to obtain testimony.  Further, for

8    the reasons stated above, the failure to disclose Hernandez is justified due to the lack of contact

9    information.  Finally, as to any breach of counsels' duty to Hernandez, once Hernandez indicated his

10   desire to be left alone, counsel did not contact him further.  As Hernandez's unsigned declaration

11   shall not be considered for any of the statements contained therein, the Court finds Defendants'

12   argument unpersuasive.

13          3.    Supplemental Declaration of Steven M. Tindall

14         Finally, on June 6, 2007, Defendants also filed an Objection and Motion to Strike Portions of

15   the Supplemental Declaration of Steven M. Tindall.  (Doc. #74.)  Defendants object to Page 2, lines

16   21-24 of Tindall's declaration, in which he states: "On or about April 16, 2007, I spoke by telephone

17   with current Budget manager Lee Jenkins.  Mr. Jenkins indicated that he would be willing to speak

18   with me about his experience as a Budget manager but said that he needed the 'green light' from

19   Budget's human resources department before he would do so."  Defendants argue that the statement

20   attributed to Jenkins is inadmissible hearsay.  Plaintiff, however, argues that he submits this

21   statements to demonstrate his counsel's efforts in contacting class members.  The Court finds the use

22   of the declaration proper for this purpose.  However, as the statement contains hearsay, the Court

23   shall not consider it for any purpose other than Plaintiff's counsel's efforts to obtain testimony.

24         Defendants further argue that Jenkins never worked as a SM for Budget; therefore, Tindall's

25   assertion that Jenkins is a "current Budget manager" lacks foundation and, moreover, the statement

26   is false because he was not a Budget employee.  The Court agrees that Tindall's assertion lacks

27   foundation, but, as stated above, the Court shall only consider Tindall's statement in the context of

28

9

1   counsel's efforts to contact class members.

2                          **IV.   LEGAL STANDARD**

3          Class actions are governed by FRCP 23, which sets forth a two-step procedure.  First, the

4   Court must determine that the following four requirements of FRCP 23 have been satisfied: (1)

5   numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation.  Fed. R. Civ. P.

6   23(a).  Once these requirements are met, the party seeking certification must also show that the

7   action is maintainable under one of the criteria found in FRCP 23(b).  *Zinser v. Accufix Research*

8   *Inst., Inc.*, 253 F.3d 1180, 1186 (9th Cir. 2001), *as amended*, 273 F.3d 1266 (9th Cir. 2001).

9          FRCP 23(b) requires that the moving party establish that either: (1) there is a risk of

10  inconsistent adjudication, or adjudication of individual class member's claims would substantially

11  impair non-party members' ability to protect their interests; (2) the opposing party acted on grounds

12  generally applicable to the class; or (3) common questions of law or fact predominate and class

13  resolution is superior to other available methods.  Fed. R. Civ. P. 23(b).

14         The moving party bears the burden of proving that certification is appropriate.  *Hawkins v.*

15  *Comparet-Cassani*, 251 F.3d 1230, 1238 (9th Cir. 2001).  The Court maintains great discretion in

16  certifying a class action.  *Vizena v. Union Pac. R.R. Co.*, 360 F.3d 496, 502 (5th Cir.2004).  The

17  Court must rigorously analyze whether the class action allegations meet the requirements of FRCP

18  23.  *General Telephone Co. Of the Southwest v. Falcon*, 457 U.S. 147, 161 (1982).  However,

19  "[b]ecause the early resolution of the class certification question requires some degree of speculation

20  . . . all that is required is that the Court form a 'reasonable judgment' on each certification

21  requirement."  *In re Citric Acid Antitrust Litig.*, 1996 WL 655791, at *2 (N.D. Cal. 1996).  "In

22  formulating this judgment, the Court may properly consider both the allegations of the class action

23  complaint and the supplemental evidentiary submissions of the parties."  *Id.* at * 2.

24  ///

25  ///

26  ///

27  ///

28                                        10

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**V.    APPLICATION TO THE CASE AT BAR**

**A.    Whether the action is maintainable under FRCP 23(a)**

    1.    <u>Numerosity</u>

Under the first requirement of FRCP 23(a), the class must be so numerous that joinder of all members individually is "impracticable." Fed. R. Civ. P. 23(a)(1). However, "impracticable" does not mean "impossible." *Harris v. Palm Springs Alpine Estates, Inc.*, 329 F.2d 909, 913-14 (9th Cir. 1964). Thus, no exact numerical cut-off can be stated and the specific facts of each case must be examined. *General Tel. Co. of the Northwest, Inc. v. E.E.O.C.*, 446 U.S. 318, 330 (1980). Moreover, "a plaintiff need not allege the precise number of class members, 'but may instead [make a reasonable] estimate on the basis of the size of a disputed offering.'" *Whiteway v. Fedex Kinko's Office and Print Services, Inc.*, 2006 WL 2642528, at *4 (N.D. Cal. 2006) (quoting *Brosious v. Children's Place Retail Stores*, 189 F.R.D. 138, 145 (D.N.J. 1999)). Although there is no exact number, some courts have held that numerosity may be presumed when the class comprises forty or more members. *Consolidated Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995).

Here, Plaintiff seeks to certify a class of seventy-six managers in California, and Defendants raise no objection to Plaintiff's motion on this ground. Accordingly, the Court finds that seventy-six individuals is sufficient to meet the numerosity requirement.

    2.    <u>Commonality</u>

Under the second requirement, there must be "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). As the Ninth Circuit stated in *Hanlon v. Chrysler Corporation*, 150 F.3d 1011, 1019 (9th Cir. 1998), the commonality requirements of FRCP 23(a) are less rigorous than the companion requirements of Rule 23(b)(3). The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class. *Id.*; *see also Staton v. Boeing Co.*, 327 F.3d 938, 953 (9th Cir. 2003) ("Rule 23(a)(2) has been construed permissively."). Although FRCP 23(a)(2) refers to "*questions* of law or fact" common to the class, there need be only a single issue common to all members of the class. *In re American Medical Systems, Inc.*, 75 F.3d 1069, 1080 (6th Cir. 1996); *see also Mullen v.*

**United States District Court**
For the Northern District of California

*Treasure Chest Casino, LLC*, 186 F.3d 620, 625 (5th Cir. 1999); *J.B. ex rel. Hart v. Valez*, 186 F.3d 1280, 1288 (10th Cir. 1999).  However, the common issues must be of sufficient importance to the case that the Court is convinced that the most efficient method of determining the rights of the parties is through a class action.  *Califano v. Yamasaki*, 442 U.S. 682, 701 (1979) ("certification is proper only when a determinative critical issue overshadows all other issues.").

Plaintiff asserts that commonality exists because Budget has uniformly classified all its California managers as exempt employees and, therefore, common questions exist, including whether such uniform classification was correct, whether any such classification was done knowingly, whether as a result of the classification Budget violated other provisions of the Labor Code (including failing to provide meal and rest breaks to managers and failing to provide proper itemized wage statements that identify the managers correct hours, overtime hours, pay rates, and overtime pay rates), whether all managers share similar job duties and responsibilities, and the proper categorization of such job duties as either exempt or non-exempt under California law.

The Court agrees that commonality exists.  Judges from this district - in recent exempt/non-exempt classification cases involving store manager claims under California law for unpaid overtime and mean and rest period violations - have found sufficient commonality when the following common legal and factual issues were presented: (1) whether the employer properly classified the managers as exempt; (2) whether the managers share similar job duties; and (3) whether the employer violated California Labor Code provisions regarding overtime, meal and rest periods, and wage statements regarding employees' hours of work.  *See, e.g., Tierno v. Rite Aid Corp.*, 2006 WL 2535056, at *2 (N.D. Cal. 2006): *Whiteway*, 2006 WL 2642528, at **4-6.  All three common issues are present here, and they are of sufficient importance to the case that the most efficient method of determining the managers' rights appears to be through a class action.  Thus, Plaintiff has met the threshold commonality inquiry of FRCP 23(a).[3]

---

[3]   In their Opposition, Defendants offer no argument specific to the commonality analysis under FRCP 23(a). Defendants do offer the argument that Plaintiff incorrectly focuses exclusively on job duties and offers no evidence of the amount of time managers spend performing those duties; however, the Court finds this argument is more appropriately

3.    <u>Typicality</u>

The third requirement of FRCP 23(a) is typicality.  While typicality and commonality "tend to merge," *see Falcon*, 457 U.S. at 158 n.13, typicality focuses on whether the named plaintiffs possess the "same interest and suffer the same injury" as class members.  *Id.* at 156.  However, "[t]ypicality refers to the nature of the claim . . . of the class representative, and not to the specific facts from which it arose or the relief sought."  *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir.1992).  Thus, under FRCP 23(a)(3)'s permissive standards, "representative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical."  *Hanlon*, 150 F.3d at 1020.  "The test of typicality 'is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs and whether other class members have been injured by the same conduct.'"  *Hanon*, 976 F.2d at 508 (quoting *Schwartz v. Harp*, 108 F.R.D. 279, 282 (C.D. Cal. 1985)).

Plaintiff argues that his claims for overtime pay, meal and rest breaks, itemized wage statements, and waiting time penalties all arise from the same course of conduct for him as for the same claims of the class: Defendants' decision to classify all of their Budget managers uniformly as exempt from California's overtime laws.  In response, Defendants raise several arguments:

First, Defendants argue that Plaintiff's claim turns on his allegation that most of his actual work time was spent on job duties which are found nowhere in his job description; thus he performed work which was different than the class members.  Defendants assertions, however, are not supported by the evidence.  Because the alleged injury is based on a misclassification of SMs as executive exempt, and Plaintiff was employed as a SM, he has suffered the same injuries and has the same interests as other SMs that Budget classified as exempt at any point during the proposed class period.  Moreover, the evidence before the Court indicates that Plaintiff performed the same general range of tasks as other class members.  (Rukin Decl., Ex. C; Tindall Suppl. Decl, Ex. A.)

Defendants next argue that Plaintiff will need to show that SMs across California engaged in

---

discussed under the FRCP 23(b) analysis.

**United States District Court**
For the Northern District of California

1    systematic breaches of union contracts by taking work away from union employees - "all without

2    any complaints from union members or representatives."  Defendants provide no authority for this

3    argument, yet even if this allegation was true, Plaintiff's overtime claim does not stand or fall on

4    whether managers spent a majority of their time on work performed by hourly employees; instead,

5    the claim depends on whether the tasks that managers performed are properly classified as exempt of

6    non-exempt.  The Court need not make such individualized determinations in determining whether

7    to certify a class.

8         Defendants also contend that Plaintiff has built his case around Budget's allegedly

9    standardized training program, which Defendants contend he did not take.  This, however, "does not

10   go to the issue of whether Plaintiff's claims are typical of those *alleged* by the class," but instead to

11   "whether there is sufficient similarity among the Managers to create common questions . . ." *Tierno*,

12   2006 WL 2535056, at *2 (emphasis in original); *see also Hanon*, 976 F.2d at 506 (typicality "refers

13   to the nature of the claim . . . of the class representative, and not to the specific facts from which it

14   arose").  Here, Plaintiff and the proposed class share the same claims: alleged overtime, meal, and

15   rest period violations.

16        Finally, Defendants argue that the proposed class will suffer from Plaintiff's credibility

17   challenges because they will oppose his claims by showing that he did not perform his job duties,

18   failed to manage his staff, harassed his employees, and had chronic attendance problems.  Again,

19   any potential credibility challenges are not relevant to the Court's preliminary typicality finding -

20   whether Defendants challenge Plaintiff's credibility is not relevant to a determination that his claims

21   regarding misclassification are typical of the class.

22        Accordingly, the Court finds that this prerequisite is satisfied.

23        4.    Adequacy of Representation

24        The final requirement of FRCP 23(a) is that Plaintiff must be able to "fairly and adequately

25   protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Adequacy of representation assures due

26   process of law to all unnamed class members; if a person is to be conclusively bound by a judgment

27   prosecuted by a representative, he must have received adequate representation. *Hansberry v. Lee*,

28                                                    14

311 U.S. 32, 42-43 (1940).  To establish adequacy of representation, Plaintiff must show: (1) that his interests are common with, and not antagonistic to, the class' interests; and (2) that he is "able to prosecute the action vigorously through qualified counsel."  *Lerwill v. Inflight Motion Pictures, Inc.*, 582 F.2d 507, 512 (9th Cir. 1978).

    *a.  Common interests*

  As to the first requirement, Plaintiff argues that his interests are closely aligned with those of the purported class because if he succeeds in demonstrating that he and the other class members were misclassified as exempt, they will all receive overtime pay and compensation.  Plaintiff also argues that his individual termination claim does not render him inadequate because named plaintiffs are permitted to assert additional, non-class claims.  Defendants, however, contend that Plaintiff is an inappropriate class representative for several reasons.

    *i.  <u>use of class action as leverage for individual claims</u>*

  Defendants first argue that Plaintiff's interest in recovering a personal judgment on his discharge claims fatally compromises his undivided loyalty to the class.  Defendants contend that Plaintiff may use his class action allegations to leverage a larger settlement of his individual retaliation claims, which may come at the expense of absent class members.  However, Judge Patel of this district answered this supposition in *In re Activision Sec. Litigation*, 621 F.Supp. 415 (N.D. Cal. 1985):

> There are two answers to this objection.  First, class certification pursuant to Rule 23(b)(3) contains an "opt out" provision which could be exercised by any individual class member who feels its interests are not adequately protected by the class representatives.  Second, should the existence of nonclass claims lead the class representatives to enter into a settlement agreement unfavorable to the class members (or refuse to enter into an advantageous agreement) the court retains the power to decertify the class at that point.

*Id.* at 434.  Further, if deemed necessary, the Court may bifurcate the individual and class claims. *See, e.g., Bates v. United Parcel Service*, 204 F.R.D. 440, 449-50 (N.D. Cal. 2001) (bifurcating trial proceedings in which "the second phase will address individual and class damages, if necessary, as well as Plaintiffs' two non-class claims.").  The Court also notes that Plaintiff is willing to dismiss

**United States District Court**
For the Northern District of California

1    his individual claims should it conclude that his retaliation claims prevent him from being an

2    adequate class representative.  (Krzesniak Suppl. Decl., ¶ 5.)

3            The cases Defendants rely upon in support of their argument are distinguishable.  In *Collazo*

4    *v. Calderon*, 212 F.R.D. 437 (D. P.R. 2002), the court denied class certification in part because the

5    alleged discrimination occurred at different agencies and there was no "common core of allegations

6    with the class at large, aside from the imputation that all were the result of political discrimination."

7    *Id.* at 443.  Here, the proposed class all worked as managers for Budget and a common core

8    allegation exists - misclassification as exempt from overtime benefits.  In *Lau v. Standard Oil Co.*,

9    70 F.R.D. 526 (N.D. Cal. 1975), class counsel was a former employee of the defendant and had a

10   pending suit alleging that he was discharged because of his "Jewishness."  The case, however, did

11   involved the issue of counsel's inadequacy, not the plaintiff's.  In *Kurczi v. Eli Lilly & Co.*, 160

12   F.R.D. 667 (N.D. Ohio 1995), a significant percentage of the named plaintiffs were pursuing

13   identical actions in separate jurisdictions.  *Id.* at 678-79.  Here, Plaintiff is not pursuing any separate

14   actions in another jurisdiction.  In *Goetsch v. Shell Oil Co.*, 197 F.R.D. 574, 579 (W.D. N.C. 2000),

15   the court found that the named plaintiff was not an adequate representative because he had failed to

16   zealously pursue class actions in prior cases and seemed to bring such suits to "earn[] a good living."

17   *Id.* at 579.  Here, there is no evidence that Plaintiff has pursued any other class actions.  Thus, the

18   Court finds Defendants' argument unpersuasive.

19                          *ii.    monetary v. injunctive relief*

20           Defendants next argue that Plaintiff, as a former employee, may be more interested in

21   monetary recovery for past harm, whereas current employees are perhaps more concerned with

22   ensuring that they are properly compensated in the future.  Although the first amended complaint

23   demands injunctive relief to "cease and desist from unlawful activities in violation of California

24   Business and Professions Code § 17200," Defendants argue that Plaintiff has only one tangible

25   interest: money.

26           Defendants cite to *Amchem Products, Inc. v. Windsor*, 521 U.S. 591 (1997) in support of

27   their argument.  In *Amchem*, the proposed class potentially encompassed millions of individuals that

28                                                        16

1    were, or some day may be, adversely affected by past exposure to asbestos products manufactured

2    by one or more of twenty companies. *Id.* at 597. The United States Supreme Court held that the

3    named plaintiffs were inadequate representatives because a conflict existed between those with

4    current injuries that sought immediate payments and those of exposure-only plaintiffs that sought to

5    ensure an ample, inflation-protected fund for the future. *Id.* at 626. The Supreme Court also found

6    the named plaintiffs inadequate based on a conflict between "discrete subclasses" that existed and

7    the "diversity within each category." *Id.*

8         In the instant case, the same issues are not present. There are no discrete subclasses - all

9    proposed class members, whether former or current managers, generally performed the same tasks

10   and were classified as exempt. Further, all proposed class members have suffered the same alleged

11   injuries - misclassification as exempt from overtime wages, and issues concerning meal and rest

12   periods. Finally, as noted above, Plaintiff is willing to dismiss his individual claims should the

13   Court conclude that his individual retaliation claims prevent him from being an adequate class

14   representative. Thus, if any conflict does arise related to Plaintiff's individual claims, such a conflict

15   can be remedied through the voluntary dismissal of his claims.

16        Moreover, former employees often provide "superior representation" in injunctive relief

17   cases. *See, e.g., Rosenburg v. IBM Corp.*, 2006 WL 1627108, at *10 (N.D. Cal. 2006) (quoting

18   *Church v. Consol. Freightways, Inc.,* 1991 WL 284083, at *15 (N.D. Cal. 1991) ("'not only are

19   former employees adequate representatives of current employees in class actions seeking at least in

20   part declaratory and/or injunctive relief, but . . . former employees provide superior representation in

21   bringing claims against the employer.'")). "Far from being inadequate class representatives,

22   plaintiffs whose relationships with the defendant have been terminated may be more forceful

23   advocates because they will be free from pressure and reprisals by the defendant." 1 Conte &

24   Newberg, *Newberg on Class Actions*, § 3:35, at 490-91. Although Plaintiff might not directly

25   benefit from injunctive relief, he has no disincentive to ask for it on behalf of the class.

26                  *iii.*   <u>*Plaintiff's alleged animus toward Defendants*</u>

27        Finally, Defendants argue that Plaintiff has exhibited undue animus toward them, thereby

28   17

**United States District Court**
For the Northern District of California

1    carrying a risk that his animus will compromise the class.  Defendants describe Plaintiff's animus as

2    "palpable," including his allegations that a supervisor threatened him with a knife while a coworker

3    smiled in approval (Hoffman Decl., Ex. 24 at D00394), that he suffered discrimination based on

4    national origin and religion (Am. Compl., ¶ 4; Ex. 21), and two complaints he made to the

5    Department of Fair Employment and Housing, which refer to alleged "harassment," "intimidation,"

6    "threats," "retaliation," "ridicule," "humiliation," and disability discrimination.  (Hoffman Decl.,

7    Exs. 23 & 24.)  Based on this history, Defendants contend that Plaintiff "harbors an undeniable

8    hatred" toward them, and there is a high probability that a desire for revenge has or will cloud his

9    judgment in this action.

10            "The reason [courts] consider vindictiveness as a factor in evaluating adequacy of

11   representation is to render ineligible individuals who possess animus that would preclude the

12   possibility of a suitable settlement."  *Kayes v. Pacific Lumber Co.*, 51 F.3d 1449, 1464 (9th Cir.

13   1995).  However, in *Kayes*, the court recognized that no cases existed in the Ninth Circuit in which a

14   vengeful plaintiff was considered an inadequate representative.  *Id.*  "Indeed, the vengeance of an

15   aggrieved person more often engenders the zealous prosecution essential to a class action than the

16   over-zealous prosecution which may threaten to strangle a class action."  *Lim v. Citizens Sav. and*

17   *Loan Ass'n*, 430 F. Supp. 802, 812 (N.D. Cal. 1976).

18            The facts now before the Court are insufficient to disqualify Plaintiff on animus grounds.

19   Defendants' evidence of Plaintiff's vindictive motive consists of his prior allegations that they

20   discriminated against him and wrongfully terminated him.  Rather than showing an "undeniable

21   hatred" that will cloud his judgment, the Court finds that Plaintiff's history with Defendants might

22   actually engender his zealous prosecution of this case on behalf of the proposed class.  *See, e.g.,*

23   *Lim*, 430 F. Supp. at 812.

24            Accordingly, the Court finds that Plaintiff's interests are common with, and not antagonistic

25   to, the interests of the proposed class.

26            *b.     Vigorous prosecution*

27            As to the second requirement, Defendants contend that Plaintiff's attorneys have not

28                                                            18

1   vigorously prosecuted this suit because, in the eighteen months since this case was filed (plus time

2   spent on pre-suit investigation), they have failed to develop favorable testimony from any putative

3   class members.

4          Having reviewed the information supplied by Plaintiff's counsel, the Court finds that

5   Defendants' argument is without merit.  Plaintiff has retained experienced class action litigators with

6   extensive background in wage and hour class actions.  (Rukin Decl. ¶¶ 17-20; Tindall Decl. ¶¶ 2-5.)

7   Thus, they have the requisite experience to prosecute this action.  Counsel have also exhibited

8   knowledge of the applicable law and appear prepared to commit the resources necessary to represent

9   the class.  *See* Fed. R. Civ. P. 23(g).

10          The Court also notes that Defendants' position here is inconsistent with its position in

11   opposition to Plaintiff's request for class member contact information.  On March 5, 2007, Plaintiff

12   filed a motion to compel the names, addresses, and telephone numbers of all managers who worked

13   for Defendants during the alleged liability period.  (Doc. #34.)  In opposing Plaintiff's request,

14   Defendants argued that Plaintiff had contacted enough potential class members to provide adequate

15   information to move for class certification, and that all class members need not be interviewed to

16   determine the propriety of certification.  (Doc. #34 at 5.)  The Court denied Plaintiff's request, in part

17   based on Defendants' arguments.  (Doc. #35.)  Thus, Defendants argument that counsel

18   communicated with too few potential class members is inconsistent with its previous position.  In

19   fact, Plaintiff's counsel has produced anecdotal evidence.  Plaintiff obtained favorable declaration

20   testimony from Sterling Brown.  (Brown Decl. ¶¶ 4-7.)  Plaintiff's counsel also attempted to submit

21   testimony from Edgar Hernandez.  (Tindall Suppl. Decl., ¶ 4; Exs. C-D.)  Given that Defendants

22   actively sought to prevent Plaintiff from receiving managers' contact information, thus preventing

23   communication with them, the Court finds that this evidence is enough to satisfy Plaintiff's

24   preliminary burden.

25          Accordingly, Plaintiff has shown that he is able to prosecute the action vigorously through

26   qualified counsel, and all prerequisites of FRCP 23(a) are satisfied.

27   ///

28                                                    19

**United States District Court**
For the Northern District of California

**B.      Whether the action is maintainable under FRCP 23(b)**

After satisfying the requirements of Rule 23(a), Plaintiff must also show that at least one of the three requirements of FRCP 23(b) is satisfied before the Court can certify the class. *Amchem*, 521 U.S. at 614-15. Plaintiff asserts that he satisfies the requirements of FRCP 23(b)(3). Under this section, the Court must find that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. Fed. R. Civ. P. 23(b)(3).

1.      Whether common questions predominate

Since common issues of law or fact must already be established under FRCP 23(a), a showing of commonality, alone, is not sufficient to satisfy this requirement. Indeed, the primary question in "many class actions is not whether common issues exist but whether common issues *predominate*." *Tierno*, 2006 WL 2535056, at *5 (emphasis in original). "'Because no precise test can determine whether common issues predominate, the Court must pragmatically assess the entire action and the issues involved.'" *Id.* (quoting *Romero v. Producers Dairy Foods, Inc.*, 235 F.R.D. 474, 489 (E.D. Cal. 2006)). If the common questions "present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis." *Hanlon*, 150 F.3d at 1022 (citation omitted).

Plaintiff contends that common questions will predominate in this case because (1) Budget operates its facilities using standardized practices and procedures set forth in common written manuals that delineate the work SMs perform, (2) SMs perform the same range of duties at Budget's California locations, (3) SMs receive uniform training and do not need to be retrained on managerial duties if they transferred to another location, and (4) Budget uniformly classifies its managers as exempt without regard to actual duties performed. Thus, Plaintiff argues that the compendium of actual manager job duties, the classification of those duties as exempt or nonexempt, and Budget's realistic expectations of the managers are the key factual issues in the case and are all susceptible to

20

common proof.  The Court agrees with Plaintiff that these questions predominate.

First, as detailed in the factual background above, Plaintiff presents evidence that, as a general matter, Budget operates its locations and trains its workforce using standardized policies and procedures.  Budget has also promulgated written service standards for managers and hourly employees at all company locations.

Second, Plaintiff presents evidence that this centralized control extends to the position of SM.  Once SMs are trained at one location, they are not retrained when they move from one location to another.  Budget also provides SMs with standardized procedures on how to perform their jobs.

Third, Plaintiff presents evidence that SMs perform the same range of duties.  All SMs are subject to a single job description and Budget has promulgated written service standards that regulate business operations.  Based on this evidence, the Court finds that it can more efficiently answer the question of whether Defendants' exemption of all SMs is correct through a class action than through case-by-case adjudication.

Recent cases in this district that are cited by Plaintiff support this finding.  In *Tierno*, a group of Rite Aid store managers claimed that their classification as exempt employees violated California labor laws and moved for class certification.  Judge Henderson granted the motion under FRCP 23(b)(3), holding that "significant aspects" of the case could be resolved on a class basis, including "the actual requirements of the job, the realistic expectations of the employer, the proper classification of store manager tasks as exempt or non-exempt, and Rite Aid's state of mind, knowledge, historical actions, and policies with respect to its classification and treatment of Store Managers." *Tierno*, 2006 WL 2535056, at *10.  Judge Henderson found predominant common issues where the plaintiff presented evidence that (1) although managers at different stores spent different amounts of time performing tasks, the managers performed essentially the same tasks at each store; (2) managers were trained through a roughly uniform training program, and when employees transferred from store to store, retraining as to managerial duties was not required; and (3) Rite Aid had treated all managers as exempt despite some variation in the amount of time they spent on various tasks. *Id.* at **6, 7, 9, 10.  These predominant common issues are the same as those

21

**United States District Court**
For the Northern District of California

1    in the present case.

2        Similarly, in *Whiteway*, a group of FedEx Kinko's center managers claimed that FedEx

3    Kinko's improperly exempted them from overtime compensation.  Judge Armstrong certified the

4    class under FRCP 23(b)(3), finding that the managers shared similar job duties and responsibilities,

5    even though there was some variation in job duties depending on the type and size of the manager's

6    particular FedEx Kinko's store.  *Whiteway*, 2006 WL 2642528, at *4.  The same is true here.

7        In their Opposition, Defendants contend that Plaintiff mistakenly focuses exclusively on job

8    duties and offers no evidence of the amount of time managers spend performing those duties.

9    Contending that  two Budget employees holding the same position may have different overtime

10   statuses, Defendants argue that the amount of time employees spend on their respective job duties

11   directly impacts the question of overtime eligibility.  The Court agrees that the amount of time does

12   impact overtime eligibility, but as discussed above, the common questions in this case predominate

13   and the question of individual hours can still be determined within a class action framework.

14       Defendants, however, argue that before certifying a class, California's overtime exemption

15   requires the Court to examine, in an individualized fashion, the work an employee actually performs,

16   and whether the employee is engaged in such work more than 50% of the time.  Defendants cite to

17   four cases in support of their argument: *Ramirez v. Yosemite Water Co.*, 20 Cal. 4th 785, 796 (1999);

18   *Sepulveda v. Wal-Mart Stores*, 237 F.R.D. 229, 246 (C.D. Cal. 2006); *Perry v. U.S. Bank*, 2001 WL

19   34920473, *5-6 (N.D. Cal. 2001); and *Walsh v. Ikon Solutions, Inc.*, 148 Cal. App. 4th 1440 (2007).

20   These cases are distinguishable and do not alter the Court's findings.

21       Defendants cite to *Ramirez* for the following: The trial court should "itemize the types of

22   activities that it considers to be [exempt], and the approximate average times that it finds the

23   employee spent on each of these activities."  *Ramirez*, 20 Cal. 4th at 803.  However, *Ramirez* was

24   not a class action and did not even discuss certification standards.  Ramirez was an action for unpaid

25   overtime brought by a bottled-water sales representative against his former employer - it concerns an

26   individual plaintiff and the definition of an "outside salesperson" within the definition of California

27   Labor Code section 1171.  *Id.* at 789-90.  The quote to which Defendants cite is simply an

28                                                22

**United States District Court**
For the Northern District of California

1    instruction from the California Supreme Court to the trial court regarding its determination of

2    whether the plaintiff was an outside salesperson.  *Id.* at 803.  Moreover, the California Supreme

3    Court has specifically rejected the argument that *Ramirez* provides such authority regarding class

4    action certifications, stating that there is no "requirement that the courts assess an employer's

5    affirmative exemption defense against every class members' claim before certifying an overtime

6    class action."  *Sav-On Drug Stores, Inc. v. Superior Court*, 34 Cal. 4th 319, 336-37 (2004)

7    ("*Ramirez* is no authority for constraining trial courts' great discretion in granting or denying

8    certification.") (internal quotations omitted).  Rather, a court may "conclude that issues respecting

9    the proper legal classification of [managers'] actual activities, along with issues respecting

10   defendant's policies and practices and issues respecting operational standardization, are likely to

11   predominate in a class proceeding . . ."  *Id.* at 331.

12        Defendants next cite to *Sepulveda* for the following: "Presumably the analysis stops here if

13   the court determines that the employee performs exempt tasks more than 50% of the time."

14   *Sepulveda*, 237 F.R.D. at 246.  In *Sepulveda*, assistant managers at over 160 California Wal-Mart

15   sought class certification, alleging that Wal-Mart had violated several provisions of the California

16   Labor Code governing overtime pay, meal breaks, reporting of hours, and prompt payment of wages.

17   *Id.* at 232.  The district court denied class certification, holding that the assistant manager duties

18   were not susceptible to collective proof, and thus individual question of whether each assistant

19   manager spent more time working in exempt or non-exempt duties predominated over common

20   issues.  *Id.* at 249.

21        In *Sepulveda*, however, there were approximately 2,750 potential class members.  *Id.* at 242.

22   The *Sepulveda* court focused on the variance among the plaintiffs' declarations regarding time spent

23   on exempt duties and determined that the proof regarding performance of exempt tasks would be

24   highly individualized.  *Id.* at 249.  *Sepulveda* correctly held that an individualized inquiry must be

25   conducted, but the proper question at the certification stage is whether this individual inquiry is the

26   predominant issue.  *Id.* at 247.  Given that the potential class covered approximately 2,750 managers

27   in over 160 California stores, the Court understands why individual duties might predominate.  That

28                                                      23

**United States District Court**
For the Northern District of California

1    is not the case here where the proposed class is no more than seventy-six members from no more

2    than thirty-six locations.  (Rukin Decl., Ex. A.)

3        Defendants also cite to *Perry* for the general idea that California's overtime exemption

4    requires an examination, in an individualized fashion, of the work an employee actually performs,

5    and whether the employee is engaged in such work more than 50% of the time.  *Perry*, 2001 WL

6    34920473, at *5.  In *Perry*, the plaintiff was a "personal banker" at U.S. Bank that sought class

7    certification, alleging that the personal banker position was misclassified as exempt.  The district

8    court denied the motion, finding that the plaintiff had not met his burden of showing that common

9    issues of fact predominate over the individual factual differences among the personal bankers.  *Id.* at

10    *7.  However, *Perry* is distinguishable because, during the period at issue, different personal bankers

11    were hired under different job descriptions and the bankers' job duties differed depending, for

12    example, on whether the individual personal banker had a license to sell annuities, mutual funds,

13    and/or life insurance policies.  *Id.* at *5.  Here, as discussed above, Plaintiff has presented evidence

14    that there is a finite list of job duties performed by all SMs, Budget uses standardized practices and

15    procedures, SMs receive uniform training and are not retrained when moved from one location to

16    another, and SMs performed the same range of duties at Budget's California locations.

17        Finally, in *Walsh*, the trial court had certified a class of managers, but later decertified the

18    class.  *Walsh*, 148 Cal. App. 4th at 1445, 1447.  The appellate court upheld the decision to decertify

19    based on the lower court's finding that common questions of law and fact did not predominate over

20    individual issues.  In decertifying the class, the lower court found that post-certification discovery

21    showed that "the circumstances of each class member's employment differs significantly from every

22    other member of the class."  *Id.* at 1447.   Here, as discussed above, the Court can make no such

23    finding at this stage in the proceedings.  Unlike the plaintiff in *Walsh*, Plaintiff is not arguing that

24    Defendants could be liable without regard to the work SMs perform.  *Id.* at 1461.  Further, the

25    proposed class in this case is relatively small and, if such an issue arises after certification, the Court

26    has the ability to manage individual issues through case management procedures, including

27    decertification if deemed necessary.  As stated above, there is no "requirement that the courts assess

28                                                                24

an employer's affirmative exemption defense against every class members' claim before certifying an overtime class action." *Sav-On Drug Stores*, 34 Cal. 4th at 336-37.

Perhaps most importantly, Defendants' argument seems to ignore the fact that Plaintiff is challenging Defendants' *policy* of classifying all managers as exempt. As Judge Armstrong noted in *Whiteway*, Defendants cannot, on the one hand, argue that all managers are exempt from overtime wages and, on the other hand, argue that the Court must inquire into the job duties of each manager in order to determine whether the manager is exempt. *Whiteway*, 2006 WL 2642528, *6; *see also Wang v. Chinese Daily News, Inc.*, 231 F.R.D. 602, 613 (C.D. Cal. 2005) ("because Defendant itself classifies all reporters and account executives as exempt[,] Defendant cannot . . . argue that the Court must inquire into the job duties of each . . . in order to determine whether that individual is 'exempt' "). Even if individual SMs performed individualized tasks (and the Court makes no such finding at this stage), the Court finds that there is not enough evidence at this time to show that such individualized tasks dominate the common questions presented in this case. Thus, as to SMs, Plaintiff has shown that common questions predominate over individual ones.

As to branch managers, the Court finds that Plaintiff has failed to meet his burden. First, Plaintiff's amended complaint does not refer to branch managers. Rather, Plaintiff refers to "Managers," but specifies that this general title refers to "Station Managers (also known as Shift Operations Managers or Sales Managers)." (Am. Compl. at 4:1-2.) Second, the Court notes that Plaintiff worked as a SM, not a branch manager. Finally, and perhaps most importantly, the evidence before the Court does not support Plaintiff's contention that SMs and branch managers perform the same work. In his declaration, Christopher Rolletta, Budget's Human Resources Director, states that branch managers are the senior managers at Budget's off-airport locations, and that SMs working at these locations generally report to branch managers. (Rolletta Decl. ¶ 4.) Plaintiff disputes this statement. Although he does not provide evidence directly contradicting this statement, he points to the declarations of Constance Stephens and Sterling Brown.

Constance Stephens is currently the Airport Manager at Budget's San Francisco Airport, and was formally a branch manager at Budget's Van Ness location in San Francisco. Plaintiff points to

**United States District Court**
For the Northern District of California

the portion of her deposition in which she states that she "was the sole management employee at Van Ness," and that a SM would manage the operation when she was not working. (Stephens Decl., ¶¶ 19-20.) However, this only indicates that a SM managed the Van Ness location in Stephens' absence; it does not indicate that an SM performed all the functions that Stephens performed as a branch manager, nor does it show that SMs performed the same tasks as branch managers on a regular basis.

Stanley Brown, a Budget employee from 1995 to 2004, attests that he worked as both a customer service representative and branch manager. Plaintiff argues that he performed the same nonexempt tasks as a branch manager that SMs performed; however, they provide no foundation for Brown's comparative knowledge. Moreover, Brown states that Budget referred to him as a Store Manager, Branch Manager and/or Location Manager, but he performed the same or substantially similar jobs regardless of the particular manager title. (Brown Decl., ¶¶ 1, 3.) He does not state that Budget referred to him as a station manager or shift manager.

The Court also notes that neither party submitted a written job description for branch managers, so it is unable to compare it to the written job description of SMs. Based on the evidence before it, the Court finds that branch managers are not part of the proposed class.

2.      Whether a class action is superior to other available means for adjudication

In addition to demonstrating the predominance of common questions, Plaintiff must also demonstrate that resolution of the issues on a class-wide basis is superior to other available methods for the fair and efficient adjudication of the controversy. In making this assessment, the Court should consider (a) the interest of members of the class in individually controlling the prosecution or defense of separate actions, (b) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class, © the desirability or undesirability of concentrating the litigation of the claims in the particular forum, and (d) the difficulties likely to be encountered in the management of a class action. Fed. R. Civ. P. 23(b)(3).

Plaintiff argues that a class action is superior to multiple individual lawsuits because the expenditure of additional time, effort and money that would be attendant to numerous individual

26

suits is greatly reduced, and the potential for differing outcomes is avoided as well.  The Court

agrees, and also finds that it is superior to individual actions because individual SMs may lack the

resources to pursue individual litigation against an entity such as Budget.  As stated in *Tierno*, "[i]f a

class was not certified in this case, the alternative would be either numerous individual suits or the

abandonment of individual claims.  The former would undoubtedly result in a great duplication of

effort . . ., while the latter would result in lost access to the courts." *Tierno*, 2006 WL 2535056, at

\*12.  Defendants, however, present several reasons why class treatment is not superior.  The Court

shall consider each in turn.

First, Defendants argue that potential class members have a financial interest in controlling

their own separate suits "rather than risk a defense verdict due to Plaintiff's aforementioned conflicts

and credibility problems."  As discussed above, the Court finds that Plaintiff will fairly and

adequately represent the class.  Thus, this argument is without merit.

Second, Defendants also seem to argue that the size of the potential awards vitiates the

superiority of class treatment.  However, the California Supreme Court has observed "that while the

impracticability of bringing an individual action for comparatively small potential recovery [is] a

consideration in favor of permitting a class action, the converse [is] not necessarily controlling, i.e.,

the possibility of a potential recovery for each class member larger than a nominal sum does not

militate against the maintenance of such an action."  *Collins v. Rocha*, 7 Cal.3d 232, 238 (1972).

Defendants cite no authority that awards in the range at issue here warrant the denial of class

certification on superiority grounds.

Third, Defendants argue that there is no particular benefit to litigating the case in this forum,

as witnesses residing in Southern California must travel hundreds of miles.  This argument,

however, merely points to the convenience of individual class members.  As Plaintiff correctly

points out, if this factor were alone determinative, there could be no state-wide class actions in

California.  Further, while Defendants argue that there is no benefit to litigating the case here, they

have not shown that another venue would be more beneficial to all potential class members.  Thus,

this argument is neutral at best.

27

1    Fourth, Defendants argue that Plaintiff's failure to identify any other pending claims by SMs

2    reinforces a finding that class treatment is inferior.  Defendants' argument actually reverses the

3    correct inquiry regarding the pendency of other claims as "[t]his factor is intended to serve the

4    purpose of assuring judicial economy and reducing the possibility of multiple lawsuits." *Zinser*, 253

5    F.3d at 1191.  The lack of other litigation mitigates in favor of, not against, a finding of superiority.

6    *Id.* (citation omitted) ("If the court finds that several other actions already are pending and that a

7    clear threat of multiplicity and a risk of inconsistent adjudications actually exist, a class action may

8    not be appropriate . . . unless the other suits can be enjoined . . ."").  Defendants cite to *Reese v. Wal*

9    *Mart Stores, Inc.*, 73 Cal. App. 4th 1225 (3d Dist. 1999), in support of their argument.  In *Reese*, the

10   trial court had found that multiple lawsuits were not likely to occur  because it was not aware of any

11   persons who claimed that they were injured by the defendant's practices other than the plaintiff.  *Id.*

12   at 1237.  However, while not finding that the trial court abused its discretion, the appellate court

13   held that "[i]n a typical case, it would be speculative to make such an assumption, and a court should

14   not uncritically assume that the absence of multiple actions reflects an absence of aggrieved parties."

15   *Id.*

16   Fifth, Defendants argue that the availability of relief before an administrative agency is also

17   superior to a federal class action because potential class members could bring individual claims

18   before the California Division of Labor Standards Enforcement.  Cal. Lab. Code § 98, et seq.  While

19   Defendants argue that such hearings "are an adequate alternative" to a class action, they have not

20   shown that they are superior.  In fact, in *Bell v. Famers Ins. Exchange*, 115 Cal. App. 4th 715, 745-

21   46 (1st Dist. 2004), the California Court of Appeals found that individualized hearings had several

22   disadvantages for the employee - injunctive relief is not available, employees cannot recover

23   attorney fees if they choose to retain counsel, and a losing employer has a right to a trial de novo in

24   superior court where the ruling of the hearing officer is entitled to no deference.  Further, "courts

25   have not hesitated to certify class actions for wage and hour claims simply because California law

26   provides for administrative relief."  *Wang*, 231 F.R.D. at 614.  Thus, Defendants have failed to show

27   why this approach, which potentially involves both administrative and judicial proceedings, would

28

**United States District Court**
For the Northern District of California

1    be preferable for class members.

2        Finally, Defendants argue that the individual analysis each SMs claim requires will result in

3    "dozens of mini-trials." *Sav-On* expressly rejects the notion, however, that an overtime class action

4    would necessarily "degenerate into a multitude of mini-trials." *Sav-On*, 34 Cal.4th at 332.  Rather,

5    courts in overtime cases such as this "may properly couple uniform findings on common issues

6    regarding the proper classification of the position at issue with innovative procedural tools . . .

7    includ[ing] administrative mini-proceedings, special master hearings, and specially fashioned

8    formulas or surveys." *Tierno*, 2006 WL 2535056, at *11 (citing *Sav-On*, 34 Cal.4th at 332-35, 337

9    & n.12).  Given this, and all of the other reasons discussed above, the Court concludes that

10   "resolution of the issues on a class-wide basis is superior to other available methods for the fair and

11   efficient adjudication of the controversy."  Fed. R. Civ. P. 23(b)(3).

12       Based on this analysis, the Court finds that Plaintiff has satisfied the criteria of FRCP 23(a)

13   and 23(b)(3). Class certification is appropriate.

14                              **VI.  CONCLUSION**

15       In light of all of the above, the Court finds that Plaintiff has satisfied his burden of

16   demonstrating the prerequisites of FRCP 23(a) and that this matter may be maintained as a class

17   action pursuant to FRCP 23(b)(3).  The Court, of course, has the inherent power to review class

18   certification decisions at any time.  *Armstrong v. Davis*, 275 F.3d 849, 872, n.28 (9th Cir. 2001).

19   Should future circumstances demonstrate that individual issues in this case either predominate or

20   render the case less manageable than anticipated, the Court can revisit its certification decision at

21   that time.

22       Accordingly, it is ORDERED that:

23   1)   Plaintiff's Motion for Class Certification is GRANTED as to SMs and as to branch managers.

24   2)   The following class is certified with respect to Plaintiff's first through fifth claims for relief

25        pursuant to FRCP 23(b)(3):

26            All persons employed as Station Managers or Shift Managers at
              Budget Rent A Car facilities in the State of California at any time
27            between December 28, 2001 and the present.

28                                      29

**United States District Court**
For the Northern District of California

3)     Plaintiff Stanley Krzesniak is appointed as a class representative.  The firm of Rukin Hyland Doria & Tindall LLP is appointed as counsel for the plaintiff class.

4)     The parties shall meet and confer in good faith as soon as practicable with respect to the requirements of FRCP 23(c)(2)(B) governing notice to the class.  If, however, the parties are unable to informally resolve this matter by way of a stipulation and proposed order, Plaintiff shall bring a noticed motion.

5)     The Court shall hold a case management conference on August 30, 2007 at 10:00 a.m. in Courtroom B.  A joint case management statement shall be due ten days in advance.

6)     All pending pretrial and trial dates in the April 10, 2006 Case Management Order (Doc. #14) are VACATED and shall be rescheduled after the August 30 Case Management Conference..

**IT IS SO ORDERED.**

Dated: June 20, 2007

_____
MARIA-ELENA JAMES
United States Magistrate Judge

30